THE STATE OF OHIO, APPELLEE, *v.* NIPPS, APPELLANT.

(No. 79AP-227—Decided December 28, 1979.)

*Mr. Gregory S. Lashutka,* city attorney, *Mr. Ronald J. O'Brien,* city prosecutor, and *Mr. David E. Tingley,* for appellee.

*Messrs. Plymale, Chieffo, Vivyan & Ball, Mr. Thomas F. Vivyan* and *Mr. Steven L. Ball,* for appellant.

BROWN, J. This appeal is taken from the judgment and sentence entered in the Franklin County Municipal Court pursuant to a jury verdict finding the defendant-appellant, John P. Nipps, guilty of violating the Ohio "Revolving Door" law, R. C. 102.03.

On September 28, 1978, an indictment was returned by the Franklin County Grand Jury, charging defendant with a violation of R. C. 102.03(A). The indictment states that John P. Nipps acted as follows on August 30, 1977:

"Being former Chief, Bureau of Fiscal Review, Ohio Department of Public Welfare, a public official or employee of a public agency, as defined in Section 102.01 R. C., did personally appear and represent a client or act in a representative capacity for any person, to wit: P. S. Operations, Inc., dba Euclid Park Nursing Center, before the Bureau of Fiscal Review, Ohio Department of Public Welfare, the public agency by which he had been employed as a public official or employee within the preceding 12 months, ending August 13, 1977 [defendant's last day of employment], on a matter which he was directly concerned and in which he personally participated during his employment by a substantial and material exercise of administrative discretion, to wit: The Bureau of Fiscal Review's setting, approval, increase or decrease in per diem payments to Euclid Park and retroactive recovery of sums due from Euclid Park, in violation of Section 102.03(A) R. C., a misdemeanor of the first degree."

Following indictment the case was remanded for proceedings in Franklin County Municipal Court where a not guilty plea was entered. Motions to dismiss the indictment on constitutional objections to R. C. 102.03 and on jurisdictional grounds were denied. A jury returned a verdict of guilty. The court sentenced the defendant to 90 days in jail and imposed a fine of $1,000. From this conviction and sentence, the defendant appeals. Defendant asserts seven assignments of error, the first of which reads as follows:

"1. The trial court erred in overruling Appellant's Motion to Dismiss the indictment because §102.03(A) *Ohio Rev. Code* is unduly broad and vague on its face and as applied to Appellant, contrary to the Ohio and U. S. Constitutions."

The defendant was found guilty of a violation of R. C. 102.03(A) (136 Ohio Laws 3514), which reads, in pertinent part, as follows:

"No public official or employee shall represent a client or act in a representative capacity for any person before the public agency by which he is or within the preceding twelve months was employed or on which he serves or within the

preceding twelve months had served on any matter with which the person is or was directly concerned and in which he personally participated during his employment or service by a substantial and material exercise of administrative discretion. * * * "

Defendant contends that the statute is vague, violating his rights to due process and equal protection as guaranteed by the Ohio and United States Constitutions, and that the statute is overbroad, infringing upon his rights of freedom of speech and association as guaranteed by Section 11, Article I, of the Ohio Constitution, and the First Amendment to the United States Constitution. We disagree and hold that R. C. 102.03 is not overbroad or vague and that it is not unconstitutional on its face, or as applied to the defendant.

Defendant bases his constitutional argument on the contention that, under R. C. 102.03(A), the employee must decide at his own risk whether, after leaving public service, he was employed (1) on any "matter" with which the person was "directly concerned," and (2) in which he "personally participated" during his employment by a "substantial and material exercise" of "administrative discretion." Both the United States and Ohio Constitutions require that the language of a statute be precise enough to provide fair notice of prohibited conduct. "Living under a rule of law entails various suppositions, one of which is that '[all persons] are entitled to be informed as to what the State commands or forbids.' * * * " (Bracketed material *sic*.) *Papachristou* v. *Jacksonville* (1972), 405 U. S. 156, 162. The due process doctrine of vagueness also requires that the terms of the statute be clear enough to prevent "arbitrary and discriminatory enforcement" by the prosecutor, the court or the jury. *Smith* v. *Goguen* (1974), 415 U. S. 566, 572-573.

It has been held that a statute written " * * * in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. * * * " *Connally* v. *General Construction Co.* (1926), 269 U. S. 385, 391; *Palmer* v. *Euclid* (1971), 402 U. S. 544; *Cincinnati* v. *Hoffman* (1972), 31 Ohio St. 2d 163. Furthermore, where a statute's literal scope is capable of limiting behavior sheltered by the First Amendment, the language is subject to more strict

scrutiny. *Smith* v. *Goguen, supra; Smith* v. *California* (1959), 361 U. S. 147.

In *United States* v. *Lambert* (D. Conn. 1978), 446 F. Supp. 890, 897, affirmed (C. A. 2, 1979), 601 F. 2d 69, certiorari denied (1979), 100 S. Ct. 148, the court distinguished the doctrines of vagueness and overbreadth as follows:

" * * * The former, originally a due process doctrine, applies when the statutory language is unclear, and is concerned with notice to the potential wrongdoer and prevention of arbitrary or discriminatory enforcement. The doctrine of overbreadth, in contrast, is exclusively a First Amendment product, and usually applies when the statutory language is clear, but encompasses activities in which people have a right to engage without interference. However, in a suit challenging an ambiguously worded statute for infringing upon First Amendment rights, the doctrines blend. * * * "

In the instant case, although defendant has alleged a First Amendment infringement, we will consider only the vagueness challenge on its face and as applied concerning these facts herein, because defendant has not articulated how a real and substantial discouragement of protected First Amendment activity has occurred.

The statute in question is not a blanket prohibition on all representation by defendant before his former employer, but only in those matters in which he, as an official or employee of the state, was "directly concerned" and in which he "personally participated" by a "substantial and material exercise of administrative discretion." A court will not adopt an unconstitutional interpretation of a statute if a constitutional interpretation is available. *State* v. *Sinito* (1975), 43 Ohio St. 2d 98; *State* v. *Perkins* (1974), 40 Ohio App. 2d 406. In the interpretation or construction of a statute, the primary function of the court is to determine and give effect to the intention of the General Assembly and the purpose to be accomplished as gathered from the provisions enacted. *Henry* v. *Central Natl. Bank* (1968), 16 Ohio St. 2d 16.

Known as the "Revolving Door" law, R. C. 102.03 was enacted to place certain restrictions on public officials and employees with respect to the relationship that may exist between a public official or employee, and the government, and the private sector. R. C. 102.03(A), when read in context

with the other subdivisions of R. C. 102.03, clearly indicates a legislative purpose to ensure that no public official or employee will engage in a conflict of interest or realize personal gain at public expense from the use of "inside" information. The statute does not impose a complete prohibition but seeks to control situations where the General Assembly has determined that the danger of abuse is the greatest. Also, the former public official or employee is only subject to the restrictions in R. C. 102.03(A) for a time limit of 12 months. Under this ethics law, a public official or employee may enter private employment in an area related to his public employment or service, but, must conform his conduct to the restrictive language utilized in the statute. The state has a substantial and compelling interest to restrict unethical practices of its employees and public officials not only for the internal integrity of the administration of government, but also for the purpose of maintaining public confidence in state and local government.

Examining the claim that the statute is unconstitutionally vague on its face, we must adopt a construction which will give a common and ordinary meaning to the language used. R. C. 1.42; *Eastman* v. *State* (1936), 131 Ohio St. 1. Although the legislature has not defined the terms used in R. C. 102.03(A),[1] in light of the attempt to regulate the area of public employee ethics, we believe that the General Assembly intended a broad encompassing meaning to this language. The requirement is that the actor must have sufficient notice of what conduct is forbidden. Both the Ohio and United States Constitutions, however, do not require specific guidelines which, in every instance, will make a clear boundary; and, we recognize the impossibility of such guidelines in this area.

"* * * That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. * * * " *United States* v. *Petrillo* (1947), 332 U. S. 1, 7.

We find that the language of R. C. 102.03(A) is not so

---

[1] However, R. C. 102.03(A) does state, in pertinent part, as follows:

" * * * As used in this division, 'matter' does not include the proposal, consideration, or enactment of statutes, rules, ordinances, resolutions, or charter or constitutional amendments. * * * "

vague that it fails to provide adequate notice of what conduct is prohibited by a former public official or employee. In the instant cause the defendant testified that he did not accept certain employment after leaving state service because it clearly would have been a violation of the law. This indicates his awareness of some ascertainable standards and of the kind of conduct which is forbidden. Furthermore, in close situations, a former public official or employee is not required to guess whether his conduct may be prohibited, but, may request an advisory opinion from the Ohio Ethics Commission; and, reliance on such an opinion, in accordance with R. C. 102.08, is a defense to an action brought under the Ohio Ethics Act, R. C. Chapter 102. R. C. 102.08. The defendant in this case did not request such an opinion although he was aware of his right to do so.

The court in *United States* v. *Nasser* (C. A. 7, 1973), 476 F. 2d 1111, 1115, considered a constitutional challenge to the federal conflict of interest statute found in Section 207(a), Title 18, U. S. Code. In holding that the statute did not violate the Fifth Amendment because of vagueness, the court stated in *United States* v. *Nasser, supra,* at page 1115, as follows: " * * * This statute proscribes perhaps as precisely as possible an unethical practice that can manifest itself in infinite forms. * * * "

Similarly, portions of the Arizona statutes concerning public official ethics have been held constitutional. See *Yetman* v. *Naumann* (1972), 16 Ariz. App. 314, 492 P. 2d 1252. Research does not reveal any other challenges to state ethics laws; however, several states have laws dealing with public employee ethics, many of which have limiting language similar to that found in R. C. Chapter 102.[2]

The contention that R. C. 102.03(A) is vague, as applied, is likewise without merit. In order to pass constitutional muster, a statute must be clear enough to prevent "arbitrary and discriminatory enforcement" by the prosecutor, the court or the jury. *Smith* v. *Goguen, supra,* at pages 572 to

---

[2] See, *e.g.,* the following statutes: Title 29, Section 5854, Del. Code; Title 7, Chapter 84, Section 18, Hawaii Revised Statutes; Chapter 68B, Section 68B.7, Iowa Code; and, Public Officers Law, Section 73, Consolidated Laws of N.Y.

See, also, similar statutes from the following states: Louisiana, Maine, Massachusetts, Michigan, Missouri, New Jersey, South Carolina and Washington.

573. We find that the language in R. C. 102.03(A) is sufficiently definite to have permitted the jury, in defendant's case, to have determined with reasonable precision whether, on the basis of the evidence presented, the defendant's conduct fell within the prescribed provisions. Where a statute is constitutional as applied to one set of facts, a court will not speculate as to its constitutionality under another set of facts not involved. *Cincinnati* v. *Hoffman, supra.*

The defendant's first assignment of error is not well taken.

Assignments of Error Nos. 2, 3 and 4 are stated as follows:

"2. The trial court erred in overruling Appellant's Motions for Acquittal because insufficient evidence was presented to convict Appellant of the crime charged in the indictment.

"3. The trial court erred in interpreting §102.03(A) *Ohio Rev. Code* so as to allow a jury to convict Appellant of the crime charged.

"4. The verdict was against the manifest weight of the evidence."

A consideration of these assignments of error requires an examination of the facts presented in the record on appeal. Defendant was an employee of the Ohio Department of Public Welfare from April of 1968 to August 13, 1977, and served as Chief of the Bureau of Fiscal Review during the last several years of his service with the department. The Bureau of Fiscal Review is responsible for establishing payment rates and auditing all Medicaid providers including physicians, hospitals and nursing homes. The nursing home section established per diem rates for which each provider would be reimbursed for each Medicaid patient served. By an internal process, costs and reporting forms are analyzed; and, a rate is determined. Over 850 nursing homes in Ohio have their rates set by the bureau at least once each year. As Chief of the Bureau of Fiscal Review, a list of the names of the providers having rate changes was submitted to the defendant for approval at the end of each month; and, approval by the defendant was necessary to make a rate change effective. In this capacity, the defendant approved, by signature, a per diem rate decrease for P. S. Operations, Inc.,

d.b.a. Euclid Park Nursing Center (hereinafter referred to as Euclid Park), on July 22, 1977. The rate was reduced from $22.84 to $21.30 per day.

Pursuant to department procedure, virtually all payment-change requests were subject to final approval by the defendant. Defense witness, Max Davis, testified that the defendant's signature was necessary in order to change a per diem reimbursement rate for a nursing home. Ordinarily, defendant would sign the list of rate changes without substantial inquiry. However, on occasion the defendant would discuss rate changes with his staff and would request and review cost reports. The fact that the rate changes could not have been made without defendant's approval implies that the defendant necessarily held the authority to veto a rate change.

Defendant terminated his employment with the state of Ohio on August 13, 1977, and entered private employment as a consulting accountant. On August 18, 1977, the administrator of Euclid Park, Gene Larrabee, telephoned the defendant concerning the Euclid Park rate decrease; and, on August 23, 1977, Larrabee and an attorney for Euclid Park had a meeting with the defendant concerning the rate decrease. Thereafter, on August 30, 1977, the defendant, Larrabee and the attorney attended a conference on behalf of Euclid Park with Ohio Department of Public Welfare representatives to discuss the rate change. State's Exhibit No. 1 is a bill from the defendant to Euclid Park for services rendered in the amount of $4,878.13. The bill was paid by Euclid Park. Thereafter, Euclid Park received a retroactive rate increase to $24.00 per day.

In the syllabus of *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, the Ohio Supreme Court set forth the standard with respect to a motion for judgment of acquittal as follows:

"Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

Based on our review of all the evidence and arguments of counsel and pursuant to our finding that R. C. 102.03(A) contains a reasonably ascertainable standard of the type of con-

duct which is forbidden, we hold that the trial court did not err in overruling defendant's motion for judgment of acquittal. As applied to R. C. 102.03(A), the record reveals that it was properly within the determination of the jury to decide whether the defendant's conduct satisfied the elements of the statutory offense. That is to say, it was for the jury to decide, in considering the duties involved in defendant's former position of reviewing nursing home rate-change requests for approval, whether he was engaged in a matter with which he was directly concerned and whether by signing a list of rate-change requests he was personally participating in that matter by a substantial and material exercise of administrative discretion. Also, a question of fact for the jury's determination was whether, by attending the conference with Ohio Department of Public Welfare personnel on behalf of Euclid Park, defendant acted in a representative capacity on the same matter before his former agency. The court did not err, as a matter of law, in sending the case to the jury on these questions. Furthermore, we find that there exists " * * * substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State* v. *Eley* (1978), 56 Ohio St. 2d 169, syllabus.

Defendant's second, third and fourth assignments of error are not well taken.

Assignment of Error No. 5 reads as follows:

"5. The trial court erred in overruling Appellant's Motion to Dismiss the indictment for lack of subject matter jurisdiction."

Assignment of Error No. 5 alleges that the Franklin County Municipal Court (the trial court) lacked jurisdiction because the Court of Common Pleas of Franklin County failed to comply with Crim. R. 21 and Local Rule 7.06 of the Court of Common Pleas of Franklin County in transferring the case from the Court of Common Pleas of Franklin County to the Franklin County Municipal Court. The trial court overruled defendant's motion to dismiss, stating that the rules in question were "adopted to establish guidelines for the control of the court docket" and were for the benefit of the court. Therefore, we find that the defendant has not been prejudiced

by the infringement of any substantive rights and that the fifth assignment of error is not well taken.

Assignment of Error No. 6 reads as follows:

"6. The trial court erred to Appellant's prejudice in refusing to admit Exhibit A into evidence."

Defendant's Exhibit A is a judgment entry by Judge Gillie of the Court of Common Pleas of Franklin County, in a pending civil suit filed by Euclid Park against the Ohio Department of Public Welfare, concerning the rate decrease approved for Euclid Park. Defendant claims that exclusion of the exhibit was error because the judgment entry shows the purpose of the August 30, 1977, meeting and is relevant on the issue of whether the defendant was acting in a representative capacity when he attended that meeting.

The record reveals that, on direct examination of the attorney for Euclid Park, the state fully elicited the contents of Defendant's Exhibit A. The attorney testified that the order called for a continuation of payments to Euclid Park, pending the outcome of the lawsuit, and for representatives of both parties to have a conference to resolve, if possible, the issues relating to the rate cut. Finding that this is the content of the entry, if any error occurred in excluding the exhibit, it was harmless because the jury was under no misapprehension concerning the circumstances of the meeting and the defendant was not prejudiced thereby. Defendant's sixth assignment of error is not well taken.

Assignment of Error No. 7 reads as follows:

"7. The trial court erred and abused its discretion in failing to apply §2929.22, *Ohio Rev. Code* in imposing sentence upon Appellant."

Upon review of the record, we find no evidence to indicate that the trial court failed to comply with R. C. 2929.22[3] in imposing sentence.

---

[3] R. C. 2929.22 provides, in pertinent part, as follows:

"(A) In determining whether to impose imprisonment or a fine, or both, for misdemeanor, and in determining the term of imprisonment and the amount and method of payment of a fine, the court *shall consider* the risk that the offender will commit another offense and the need for protecting the public therefrom, the nature and circumstances of the offense, the history, character, and condition of the offender and his need for correctional or rehabilitative treatment, and the ability and resources of the offender and the nature of the burden that payment of a fine will impose on him." (Emphasis added.)

Furthermore, the sentence was within the permissible limits of R. C. 2929.21, penalties for misdemeanor, and we find that the trial court did not abuse its discretion in sentencing. Defendant's seventh assignment of error is not well taken.

On consideration thereof, this court finds that the defendant was neither prejudiced nor prevented from having a fair trial. The judgment of the Franklin County Municipal Court is hereby affirmed.

*Judgment affirmed.*

STRAUSBAUGH, P. J., concurs.

WHITESIDE, J., dissents.

BROWN, J., of the Sixth Appellate District, sitting by designation in the Tenth Appellate District.

WHITESIDE, J., dissenting.  Finding at least the fourth and sixth assignments of error to be well taken, I must respectfully dissent.

In the fourth assignment of error, defendant contends that the verdict was against the manifest weight of the evidence. Although I concur in the finding that R. C. 102.03(A), properly construed, is neither unduly broad nor vague on its face, there is some question as to the broad application of the statute permitted by the trial court; however, the broad application permitted by the trial court was a result of the failure of the trial court to give more definitive instructions to the jury, an issue not raised on appeal, rather than the trial court's constitutional rulings. R. C. 102.03(A) (136 Ohio Laws 3514) reads, in pertinent part, as follows:

"No public official or employee shall *represent* a client or act in a *representative capacity* for any person *before* the public agency by which he is or within the preceding twelve months was employed or on which he serves or within the preceding twelve months had served on any matter with which the person is or was directly concerned and in which he personally participated during his employment or service by a substantial and material exercise of administrative discretion. * * * " (Emphasis added.)

Since this is a criminal statute, it must be strictly construed. Thus, a former public officer or employee is not in violation of the statute unless he actually represents, or acts

in a representative capacity for, any person. However, such representation is not prohibited unless the representation occurs before the public agency by which the former public officer or employee was employed. Here, there is a serious question both as to whether defendant acted in a representative capacity and, even if he did, whether he did so before the public agency by which he was previously employed.

The gravamen of the charge against defendant was his attendance at a meeting held on August 30, 1977, between the attorney for P. S. Operations, Inc., d.b.a. Euclid Park Nursing Center (hereinafter referred to as Euclid Park), and a representative of the Attorney General's office, and representatives of the Bureau of Fiscal Review, Ohio Department of Public Welfare. The meeting was essentially a settlement conference prompted by a lawsuit brought by Euclid Park against the director of the Department of Public Welfare as to the rate of payments to be made to Euclid Park.

The primary witness for the state, as to defendant's participation in the meeting, was the attorney for Euclid Park. Concerning defendant's participation in the meeting, the attorney testified as follows:

"Q. And in what capacity was Mr. Nipps present?

"A. Well, it occurred to me that he was there to help me to objectively determine whether what the Department of Welfare was telling me about rates was true, because I had no way of knowing in terms of resolving the lawsuit, what — you know, I'm not an expert in rate setting and — although Mr. Larrabee's been an administrator, he's not an expert either, so this was—he was there to help resolve some of those problems, I believe."

The state also called, as a witness, Gene Larrabee, the administrator of Euclid Park, who testified with respect to defendant's capacity at the meeting, as follows:

"Q. And what was Mr. Nipps's capacity at the meeting?

"A. Basically, he was there as a — as an objective person to look at the facts and the situation. He was a person who, had we ever gotten to trial point, we would have probably subpoenaed as an expert witness; and he was just there to assist and clarify — and in clarifying the Welfare Department's procedures in calculating rate settings."

Thus, defendant attended the meeting primarily for the purpose of giving technical advice to the representatives of Euclid Park, namely its attorney and administrator.

As indicated, there is a serious question as to whether the meeting was a matter "before the public agency" within the contemplation of the statute. Ordinarily, an individual represents someone "before a public agency" when the agency is conducting some type of proceeding to make a determination of the rights or obligations of the person being represented or some other person. While it may not be necessary that the proceedings be formal in nature, it is necessary that there be a matter pending before the public agency for its determination. Here, the meeting was conducted pursuant to an order of the court in the pending litigation. It was essentially a settlement conference; and, it should make no difference as to the place that the meeting was held, whether at the offices of the Department of Public Welfare or in a conference room at the courthouse, or in an attorney's office. For these reasons, the fourth assignment of error should be sustained.

Likewise, the sixth assignment of error (concerning the trial court's ruling on the admissibility of Defendant's Exhibit A) should be sustained since, by failing to admit Defendant's Exhibit A, the trial court excluded the evidence as to the circumstances under which the meeting in question was conducted, namely, the entry of the trial court, in the pending proceedings, ordering the meeting.

The state's contention that the testimony of Euclid Park's attorney was sufficient to explain the order, rendering the order itself inadmissible, is both contrary to the evidence and legally incorrect. The attorney explained the order as follows:

"Q. What would that order have been?

"A. As I recall it, the order called for several things. First thing it called for was the continuation of payments to the nursing home until the case was resolved at the normal rate that they had been paid before the rate cut. The next thing it called for, as I recall, is for the Department of Welfare and its representatives to get together in a conference with my clients, in order to resolve, if at all possible, the issues relating to the rate cut. And I believe that was the substance of that order."

The order itself (Defendant's Exhibit A), however, which the trial court excluded from consideration by the jury, reads as follows:

"This cause came on to be heard on August 26, 1977, and it appearing to the Court that the parties are in agreement that this matter may be settled or compromised if the parties are able to confer with each other at the Department of Welfare, and it also appearing to the Court that the representative of the Ohio Department of Welfare is present, and that said representative has made representations to the effect that the Ohio Department of Welfare will pay to the plaintiff [Euclid Park] a usual monthly vendor check in an amount no less than $21.38 for the month of August payable on or about September 15, 1977.

"It is ordered that defendants, through their authorized agents, and plaintiff meet on August 30, 1977, at 1:00 o'clock p.m. at the Ohio Department of Welfare's office on the 33rd floor of the State Office Tower to discuss the amount in controversy between them.

"It is further ordered that after an agreement has been reached between the parties, the parties shall certify their agreement to the Court.

"It is further ordered that the Ohio Department of Welfare pay to the plaintiff its usual monthly vendor check in an amount no less than $21.38 for the month of August which shall be payable on or about September 15, 1977."

Obviously, the order constitutes the best evidence as to the contents of the order. It is a novel proposition that secondary evidence, consisting only of testimony as to an attorney's recollection as to the contents of the order, precludes the admission of the best evidence as to the contents of the order. As is well settled, ordinarily, secondary evidence is inadmissible, the best evidence being required. The trial court erred in excluding this evidence, Defendant's Exhibit A; and, such exclusion was prejudicial to defendant since the jury was deprived of the information as to the nature and circumstances of the meeting which defendant attended.

Accordingly, I would sustain the fourth and sixth assignments of error, reverse the judgment and remand the cause for a new trial.