*In re* CARMELO GUZMÁN GÉIGEL, querellado.

*Número:* MC-78-3          *Resuelto:* 15 de junio de 1982

*Héctor A. Colón Cruz, Procurador General,* y *Eliadís Orsini Zayas, Procuradora General Auxiliar,* abogados de El Pueblo; *Fernando E. Agrait,* abogado del querellado.

El Juez Asociado Señor Dávila emitió la opinión del Tribunal.

El Procurador General de Puerto Rico presentó un informe en el que imputa al Lic. Carmelo Guzmán Géigel conducta reñida con los Cánones 21 y 38 de Ética Profesional y los Arts. 1 y 3 de la Ley Núm. 110 de 12 de mayo de 1943 (3 L.P.R.A. secs. 567 y 569).[1]

El Lic. Carmelo Guzmán Géigel se desempeñó como Subdirector de la Oficina Central de Administración de Personal hasta el 31 de diciembre de 1976. Era responsable de coordinar la fase operacional de la agencia y colaboraba con la Directora en la formulación de la política pública.

---

[1] Prohíben ciertas actividades a los funcionarios y empleados del Gobierno en determinados asuntos luego de éstos haber cesado en sus funciones.

Actuando de conformidad con la Ley de Personal del Servicio Público de 1975 y, en específico, de sus Arts. 4.7 y 9, el licenciado Guzmán en el desempeño de su cargo tomó decisiones y autorizó ciertas transacciones de personal relativas a nombramientos o cambio de *status* de empleados tanto en la agencia en la cual trabajaba como en otras agencias bajo su jurisdicción.

Un mes después de la renuncia del licenciado Guzmán, el Secretario de Justicia emitió una opinión mediante la cual se validaron varias cartas normativas emitidas por la agencia mientras el licenciado Guzmán se desempeñaba como Subdirector. Como consecuencia de la opinión del Secretario de Justicia el nuevo Director invalidó las transacciones de personal realizadas a tenor con dichas cartas. El licenciado Guzmán Géigel asumió la representación legal de varias de las personas afectadas por esta acción y compareció a representarlas ante la Junta de Apelaciones del Sistema de Administración de Personal.

El licenciado Guzmán Géigel aceptó los hechos anteriormente expuestos mas adujo que él no emitió juicio ni tuvo ante su consideración ningún caso específico de los que representó posteriormente ante la Junta de Apelaciones.

Del informe del Procurador General no surge si las transacciones de personal posteriormente anuladas fueron precisamente las que el licenciado Guzmán Géigel autorizó o aconsejó. En ausencia de este dato, no podemos inferir la existencia de asuntos específicos que hubieran sido considerados por el querellado como Subdirector de la agencia y que directa o indirectamente fueran objeto de controversia en los casos en que él asumió la representación. Así, pues, nuestra encuesta se circunscribe a determinar si el empleo público en una agencia del gobierno en particular implica una obligada abstención de parte del empleado de participar en asuntos de algún modo relacionados con su función cuando cese en su empleo gubernamental.

El Art. 1 de la Ley Núm. 110 de 12 de mayo de 1943 (3 L.P.R.A. sec. 567) dispone:

Se declara ilegal el que los funcionarios o empleados del Gobierno de Puerto Rico, después de cesar como tales, actúen como asesores, consultores o consejeros, o representen como abogados, agentes, apoderados o en el ejercicio de cualquier profesión o especialidad, intereses contrarios a los del Estado Libre Asociado de Puerto Rico, en aquellos asuntos, acciones, procedimientos o reclamaciones, que estuvieron en alguna forma sometidos al conocimiento o resolución de o en trámites ante alguna agencia, oficina o tribunal del Gobierno de Puerto Rico, mientras dichas personas fueron funcionarios o empleados en dicha agencia, oficina o tribunal, y siempre que dichos funcionarios o empleados hubieren tenido directa o indirectamente que ver con aquellos asuntos, acciones, proce-dimientos o reclamaciones sometidos para resolución o en trámite ante la agencia, oficina o tribunal del Gobierno de Puerto Rico para quien prestase servicios. Se declara asi-mismo ilegal el que dichos ex empleados o ex funcionarios cooperen en cualquier forma en la preparación o tramitación contra el Estado Libre Asociado de Puerto Rico, de dichos asuntos, acciones, procedimientos o reclamaciones, y el que usen o faciliten el uso contra el Estado Libre Asociado de Puerto Rico de informaciones de hecho obtenidas mientras fueron funcionarios o empleados.

La infracción de esta disposición constituye un delito menos grave [2] y, además, "haya o no convicción en un proceso criminal, constituirá mala práctica profesional y justificará la cancelación temporal de la licencia o título concedido a la persona afectada para el ejercicio de su pro-fesión o especialidad". Art. 3 (3 L.P.R.A. sec. 569). [3]

---

[2] Aunque la ley dispone multa de cien a mil dólares o cárcel de dos meses a un año, debe entenderse enmendada la pena a un máximo de quinientos dólares o seis meses de cárcel. Ley Núm. 9 de 7 de julio de 1971 (34 L.P.R.A. sec. 1712), y *Pueblo* v. *Álvarez Maurás*, 100 D.P.R. 620 (1972).

[3] "Toda persona que voluntariamente infrinja las disposiciones de la sec. 567 de este título incurrirá en delito menos grave (*misdemeanor*), y será castigada con multa no menor de cien (100) dólares ni mayor de mil (1,000) dólares, o cárcel por un término mínimo de dos (2) meses y máximo de un (1) año. Además, dicha

Además, los tribunales, organismos cuasi judiciales, juntas, comisiones, oficinas, etc., rehusarán la intervención de tales personas cuando intentaren actuar infringiendo las disposiciones de la ley en cuestión. Art. 2 (3 L.P.R.A. sec. 568). (⁴)

Las anteriores disposiciones no están ceñidas en su aplicación a los abogados exclusivamente. Aplican a consejeros, asesores, consultores o personas que actúan como agentes, apoderados o en el ejercicio de cualquier otra profesión o especialidad.

■ Existe un gran interés en evitar que los funcionarios públicos desempeñen sus tareas teniendo en mente su posterior intervención en esos mismos asuntos en el sector privado. Ciertamente la gestión del gobierno debe estar libre de influencias ajenas al bien común y debe propender a que las decisiones se tomen teniendo presente lo que genuinamente conviene al interés público y no lo que podría ser más beneficioso a la larga para el funcionario que toma las decisiones. De lo contrario, se erosionaría la fe del pueblo en la efectividad y eficiencia de su gobierno. La legislación que consideramos es un ejercicio válido del poder de razón de estado.

■ La citada disposición no constituye una prohibición absoluta de representación por parte del funcionario ante su anterior patrono. La ley requiere que la intervención del funcionario en una y otra ocasión debió ser respecto al mismo asunto que tomaba en consideración mientras servía

---

infracción, haya o no convicción en un proceso criminal, constituirá mala práctica profesional y justificará la cancelación temporal de la licencia o título concedido a la persona afectada para el ejercicio de su profesión o especialidad. El Tribunal Supremo de Puerto Rico tendrá jurisdicción original para conocer de las querellas que se establezcan de acuerdo con las disposiciones de esta sección, cuando no hubiese un organismo oficial con autoridad sobre la persona; y cuando hubiese tal organismo, tendrá el Tribunal Supremo jurisdicción apelativa en el asunto."

(⁴)"Los tribunales, organismos cuasi judiciales, juntas, comisiones, oficinas, funcionarios o empleados del Gobierno de Puerto Rico rehusarán la intervención de los funcionarios o empleados, que habiendo cesado como tales, intentaren actuar o intervenir en asuntos infringiendo las disposiciones de la sección anterior."

al gobierno. Aunque la ley no define lo que es *asunto*, a la luz de los hechos del presente caso es fácil concluir que en el mismo no hubo identidad de asunto. En la primera ocasión se trataba de la consulta que hicieron ciertos administradores de personal a la Oficina Central de Administración de Personal mediante la cual el querellado emitió un juicio administrativo para ser aplicado en forma general. En la segunda ocasión se trataba de procedimientos de despido respecto a empleados específicos. Tales despidos ocurrieron luego de que el querellado cesó en el desempeño de su cargo.

A los fines del estatuto en cuestión, no puede considerarse que se trata del mismo asunto cualquier intervención o participación del funcionario en la promulgación de normas o reglamentos de aplicación general o de directrices e instrucciones abstractas que no aludan a situaciones particulares o casos específicos.

Bajo la legislación federal se llegaría a una solución similar al problema ante nosotros. El *Ethics in Government Act* de 1978 (18 U.S.C. sec. 207), ley que restringe el empleo de los funcionarios y empleados de la Rama Ejecutiva y del Distrito de Columbia luego de cesar en el empleo público, no se extiende a cualquier *asunto* que el funcionario considerara personalmente mientras desempeñó su cargo sino que se limita a asuntos que involucren partes específicas. Por consiguiente —señala el informe de la Comisión del Congreso que estudió la medida legislativa— enunciar reglas generales, formular la política o normas generales, realizar otros asuntos administrativos similares y menesteres legislativos —ninguno de los cuales involucran típicamente a determinados litigantes— no caen dentro del ámbito de esta prohibición.

"Por lo tanto —expresa el informe— un ex-funcionario podría presentarse ante la agencia para la cual trabajaba, representando a un cliente particular en un asunto diferente tocante a una norma de la agencia, aun cuando él hubiera participado en la promulgación de dicha norma."

Senate Reprt. No. 95-170, 95th Cong., 2nd Sess., reproducido en *U.S. Code Cong. & Adm. News* 4216, 4368 (1978).

El propio Procurador General de Estados Unidos ha expresado que el término "asunto" (*matter*) no incluye la promulgación de reglas ni la formulación de normas y estándares generales. *Memorandum of Attorney General Regarding Conflict of Interest* (1963), publicado en la edición de 1976, 18 U.S.C. sec. 201, pág. 1027.

Esta legislación federal, como bien señala el querellado en su alegato, impide actuar de por vida al funcionario en asuntos en los cuales participó personal y sustancialmente y que ocurrieron mediante decisión, aprobación o desaprobación, recomendación o consejo, o investigación particulares que involucraren partes específicas. El estatuto igualmente impide que por dos años el funcionario participe en asuntos que oficialmente hubieren estado bajo su consideración, siempre que estuvieren involucradas partes específicas. Finalmente, la ley también impone una prohibición a que el funcionario comparezca a la agencia durante un año desde que cesa en el empleo. Como se ve, esta legislación es más explícita que la nuestra, y la reglamentación del empleo subsiguiente de los funcionarios públicos es también mucho más específica.

Por otro lado, muchos de los estados que han adoptado esta legislación han impuesto prohibiciones temporeras por períodos de tiempo que, de ordinario, fluctúan entre uno y dos años. Otros han limitado la prohibición únicamente respecto a aquellos asuntos por los que el funcionario respondía mientras se desempeñaba en el servicio público. G. P. Bollwerk, III, *Conflicts of Interest and the Former Government Attorney*, 65 Georg. L.J. 1025, 1031–1032 (1977).

Advertimos que nuestra legislación no es modelo de precisión y que, contrario a lo que sucede con la legislación federal, podría ser vulnerable a un ataque constitucional. Precisamente, el querellado ha alegado que el estatuto es inconstitucional por razón de su imprecisión (*vagueness*),

pues no se sabe lo que quiere decir *asunto*, no define adecuadamente las actuaciones específicas que prohíbe, ni el término de proscripción, ni establece criterio alguno a tenor con el cual un servidor público pueda desempeñarse cuando cesa en su empleo.

■ No es necesario que nos expresemos en este momento sobre el particular, en vista del resultado al que llegamos. No obstante, conviene recordar que la suspensión, así como el desaforo, son penalidades o castigos impuestos a un abogado. *In re Ruffalo*, 390 U.S. 544, 550 (1968). Cualquier disposición de ley que, como la objeto del presente examen, involucre una penalidad y una sanción disciplinaria como consecuencia de su infracción, no puede estar concebida en términos tan ambiguos que no permita razonablemente inferir la conducta proscrita. *Pueblo* v. *Santiago Vázquez*, 95 D.P.R. 593, 595 (1967). Las personas de inteligencia común y corriente —hemos dicho— no deben estar obligadas a adivinar en cuanto al significado del estatuto. *Pueblo* v. *Mantilla*, 71 D.P.R. 36, 40 (1950).

■ La doctrina de nulidad por imprecisión no solamente requiere que se alerte adecuadamente a la persona sobre la conducta prohibida sino que requiere de la Asamblea Legislativa que establezca guías razonablemente claras para regir la discreción que pueda tener el funcionario a cargo de la implantación del estatuto. *Papachristou* v. *City of Jacksonville*, 405 U.S. 156 (1972).

La doctrina de la ambigüedad o imprecisión se ha desarrollado primordialmente bajo el palio de la Primera Enmienda de la Constitución federal. Generalmente está relacionada y en ocasiones se confunde con el concepto de la sobrextensión (*overbreadth*).

> [L]as faltas al debido proceso de ley causadas por leyes imprecisas de su faz —ausencia de advertencias claras a los demandantes; ausencia de patrones apropiados que sirvan de guía a los agentes de la ley, investigadores y tribunales de apelación— son precisamente las fallas de las [leyes "sobrex-

tendidas"]. Note, *The First Amendment Overbreadth Doctrine,* 83 Harv. L. Rev. 844, 871–872 (1970). [5]

En Puerto Rico hemos incorporado estas doctrinas a los estatutos de naturaleza penal, en los que el debido procedimiento de ley adquiere especial relieve y donde el concepto de vaguedad está íntimamente relacionado con el principio de "tipicidad".

No habiéndose demostrado que la participación del querellado en los asuntos que se le imputan pasara de ser de una mera gestión en la promulgación de normas y directrices de aplicación general y no habiéndose señalado ningún caso específico que como tal hubiese considerado el querellado mientras ocupaba el puesto de Subdirector de la agencia, procede la desestimación de la queja por dejar de exponer hechos que justifiquen la aplicación de la medida disciplinaria contemplada por la ley.

En cuanto a la imputación de violación del Canon 38 de los de Ética Profesional el resultado es el mismo. El Canon 38 dispone que "[t]odo abogado que abandone el servicio público debe rechazar cualquier empleo o representación legal en aquellos *casos particulares* en relación con los cuales haya emitido juicio profesional como empleado público".. Pero ya hemos visto que de los hechos estipulados por las partes no surge que el querellado hubiese participado en un *caso particular* de los que posteriormente asumió la representación legal.

En este sentido nuestro Canon 38 no debe tener mayor alcance que el equivalente Canon 9 del Código de Responsabilidad Profesional de la Asociación Americana de Abogados (A.B.A.), específicamente, de la Consideración Ética (E.C.) 9-3 y de la Regla de Disciplina (D.R.) 9-101(B) que

---

[5] Para una aplicación reciente de esta doctrina, véase *Soto* v. *Srio. de Justicia,* 112 D.P.R. 477 (1982), en que declaramos inconstitucional una ley que restringía absolutamente el acceso del público a los papeles del Negociado de Investigaciones Especiales.

proscribe igual tipo de conducta profesional, los cuales disponen como sigue:

Canon 9:   A lawyer should avoid even the appearance of professional impropriety.

E.C. 9-3:   After a lawyer leaves judicial office or other public employment, he should not accept employment in connection with any matter in which he had substantial responsibility prior to his leaving, since to accept employment would give the appearance of impropriety even if none exists.

D.R. 9-101:   Avoiding even the appearance of impropriety.

(A) .    .    .    .    .    .    .    .

(B) A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

(C) .    .    .    .    .    .    .    .

Se ha argumentado, con sobrada razón, que · estos cánones de la A.B.A. están limitados a las actividades de los abogados que se desempeñan como tal y no a los que lo hacen como legisladores y ejecutivos. Bollwerk, *Conflicts of Interest,* supra.

Los casos que hemos podido hallar, en los que, al aplicarle los cánones de A.B.A. o los estatutos similares sobre conflicto de intereses en el empleo público, determinaron que el abogado los infringió, son situaciones claras en las que no hay duda de que el abogado, mientras se desempeñó en el servicio público, participó en el caso que posteriormente representó. Véanse, *e.g., Telos, Inc.* v. *Hawaiian Telephone Company,* 397 F.Supp. 1314 (1975); y *State* v. *Nipps,* Ohio App., 419 N.E.2d 1128 (1979).

Éste, ciertamente, no ha sido el caso del querellado Carmelo Guzmán Géigel. *Se dictará sentencia en que se desestime y archive la querella.*

El Juez Asociado Señor Díaz Cruz concurre en el resul-

tado en voto separado. El Juez Asociado Señor Negrón García concurre en el resultado sin opinión.

—O—

Voto concurrente en el resultado del Juez Asociado Señor Díaz Cruz.

No considero esta Ley Núm. 110 de 12 mayo, 1943 (3 L.P.R.A. secs. 567 y 569) vaga ni sobreextendida. Su texto limita la sanción a asuntos, procedimientos, reclamaciones, etc. en que intervino ("tuvo que ver") el empleado, que equivale en su latitud a la frase *"any matter in which he had substantial responsibility"* del Código de Responsabilidad Profesional de A.B.A. Véase que el querellado no tuvo dificultad en oponer a los cargos una meritoria defensa, precisamente por resultar su conducta profesional *claramente* excluida de la prohibición del estatuto.

Por tanto, estimo innecesario colocar esta Ley especial en capilla ardiente de inconstitucionalidad con entierro diferido.