Betty K. Peachey appeals from a judgment of the Miami County Municipal Court which found her guilty of violating Tipp City Code of Ordinances Section 154.052 ("Section 154.052") and ordered her to pay a fine and court costs.
The record reveals the following. On November 13, 1998, Peachey installed an awning on the front of the Coldwater Café at 35 East Main Street, Tipp City, Ohio. The café was located within the Old Tippecanoe City Restoration and Architectural District ("District").
On November 19, 1998, the City of Tipp City ("city") sent a Notice of Violation and Order for Correction to Peachey, informing her that the awning was in violation of Section 154.052(D) and ordering her to either remove the awning and return the building to its previous condition within ten days or to obtain a certificate of appropriateness for the awning from the Restoration and Architectural Board of Review ("Restoration Board") within ten days. Peachey took no action in response to the letter.
On December 24, 1998, the city filed a complaint against Peachey alleging that she had "recklessly cause[d] and permit[ted] the exterior of the [café], located in the [District], to be altered by attaching an awning to the building face without first obtaining a certificate of appropriateness from the [District's] Restoration Board, all contrary to and in violation of [Section 154.052]."
On May 13, 1999, a trial was held. On July 1, 1999, the trial court found Peachey guilty of violating Section 154.052 and ordered her to pay a $50.00 fine and court costs. Peachey now appeals the trial court's decision. She advances two assignments of error.
 I. THE DECISION OF THE TRIAL COURT SHOULD BE REVERSED BECAUSE THE ORDINANCE UNDER WHICH MS. PEACHEY IS CHARGED IS UNCONSTITUTIONALLY VAGUE.
Peachey argues that Section 154.052 is unconstitutionally vague because the key terms in the ordinance are not defined and the city failed to adopt review guidelines as required by Section 154.052.
Before addressing the merits of Peachey's argument, we must determine whether, as the city argues, Peachey waived the argument by failing to raise it in a pre-trial motion in the trial court. The city points to Crim.R. 12(B) in support of its argument.
Crim.R. 12(B) states:
 Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial:
 (1) Defenses and objections based on defects in the institution of the prosecution;
 (2) Defenses and objections based on defects in the indictment, information, or complaint (other than failure to show jurisdiction in the court or to charge an offense, which objections shall be noticed by the court at any time during the pendency of the proceedings);
 (3) Motions to suppress evidence, including but not limited to statements and identification testimony, on the ground that it was illegally obtained. Such motions shall be filed in the trial court only[;]
(4) Requests for discovery under Crim.R. 16;
 (5) Requests for severance of charges or defendants under Crim.R. 14.
(Emphasis added.) A defendant's failure to raise the defenses or objections which must be made prior to trial shall constitute a waiver thereof, unless she can show good cause for relief from such waiver. Crim.R. 12(G).
Although the city raised this argument at trial, the trial court did not address it and instead found that Section 154.052 was not unconstitutionally void for vagueness.
We do not believe that Peachey's argument that Section 154.052 is unconstitutional because it is void for vagueness falls within the list, supra, of issues that must be raised before trial. The city did not direct us to any relevant case authority which supports its argument, and we are unable to locate any such authority. Thus, the city's argument is not persuasive.
Furthermore, Peachey arguably did raise this issue in the trial court in two of her pro se pre-trial filings. In a motion to dismiss, filed March 25, 1999, she argued that the case against her should be dismissed "because the charge specified * * * fail[ed] to allege a violation of a valid law of the [city]." Peachey filed another motion on April 7, 1999, with an attached case titled City of Miamisburg v. Hannah (Feb. 13, 1981), Miamisburg Municipal Nos. 80 8 CRB 12, 13, 14, unreported. That case involved three defendants charged with failing to obtain permits prior to erecting signs on their respective business buildings. The defendants filed motions to dismiss challenging the validity and constitutionality of the city ordinances. One of their constitutional challenges was that the ordinances were invalid because they lacked explicit standards for determining whether a permit would be granted or denied, and the court found this argument to be persuasive. Thus, arguably, she did raise the issue in her pre-trial filings.
Peachey states that she is "not arguing that [Section 154.052] is unconstitutional on its face" but rather "is arguing that because Tipp City failed to enact certain guidelines mandated by the ordinance, the ordinance became unconstitutionally vague." Thus, we will only address whether Section 154.052, as applied, is vague.
There is a strong presumption in favor of the validity of an ordinance. Downing v. Cook (1982), 69 Ohio St.2d 149, 151,431 N.E.2d 995, 997. A party challenging the validity of an ordinance bears the burden of demonstrating its unconstitutionality.Mayfield-Dorsh, Inc. v. South Euclid (1981), 68 Ohio St.2d 156,157, 429 N.E.2d 159, 160.
As we have previously stated:
 The Home Rule Provision, Section 3, Article XVIII of the Ohio Constitution, grants local police power to municipalities. Encompassed within this grant is the authorization for municipalities to adopt zoning regulations. Hudson v. Albrecht, Inc. (1984), 9 Ohio St.3d 69, 9 OBR 273, 458 N.E.2d 852. As a municipality, [a city] has the power and authority to adopt zoning regulations governing the * * * modification * * * of buildings within the city. Among the purposes the regulations may serve and promote is the preservation of the appearance of historic structures in a condition consistent with their original period and design. Id.
 Zoning regulations of this kind do not exist in a vacuum. Some mechanism of control is usually established, and a city may enact reasonable delegations of authority to its officers and agencies to interpret and apply the regulations. This is generally done * * * through a permit scheme. Authority to issue or deny a permit to take the steps concerned may be delegated to an agency so long as the agency is given the necessary guidance by the city in how to exercise its discretion.
 "It is the function of the legislative body to determine policy and to fix the legal principles which are to govern in given cases. * * * However, it is not possible for the legislature to design a rule to fit every potential circumstance. As such, legislation may be general in nature, and discretion may be given to an administrative body to make subordinate rules, as well as to ascertain the facts to which the legislative policy applies. * * * In order to be valid, however, the legislative enactment must set forth sufficient criteria to guide the administrative body in the exercise of its discretion." Id., 9 Ohio St.3d at 73-74, 9 OBR at 277, 458 N.E.2d at 857.
 Sherman v. Dayton Bd. of Zoning Appeals (1992), 84 Ohio App.3d 223,225, 616 N.E.2d 937, 938.
"The due process doctrine of vagueness * * * requires that the terms of [an ordinance] be clear enough to prevent `arbitrary and discriminatory enforcement' by the prosecutor [or] the court."State v. Nipps, 66 Ohio App.2d 17, 19, 419 N.E.2d 1128, 1131, quoting Smith v. Goguen (1974), 415 U.S. 566, 572-573,94 S.Ct. 1242, 1247. To prevent arbitrary and discriminatory enforcement, the ordinance must provide explicit standards for those who apply it. In re Complaint Against Harper (1996), 77 Ohio St.3d 211,221, 673 N.E.2d 1253, 1262, certiorari denied (1997), — U.S. ___,117 S.Ct. 2454 (citation omitted). A vague ordinance impermissibly delegates basic policy matters to enforcement officials for resolution on a subjective basis. Id.
Because of the imprecision of language, however, "we can never expect complete certainty from its use. It will always be true that fertile legal `imagination can conjure up hypothetical cases in which the meaning of * * * [disputed] terms will be in nice question.'" Id., quoting American Communications Assn. v. Douds
(1950), 339 U.S. 382, 412, 70 S.Ct. 674, 691.
Section 154.052 is part of the zoning regulations adopted by the city. The purpose of the section is "to preserve and maintain that unique character of historical Tippecanoe City which serves as a visible reminder of the history and cultural heritage of the city, state, and nation. Furthermore, it is the purpose of this section to stabilize and improve property values within the [District] through protection and preservation of [its] basic characteristics * * *." Section 154.052(A). To implement this purpose, the Restoration Board was created and was given power to review all plans for alteration of structures within the District and to issue certificates of appropriateness for approved improvements within the District. Section 154.052(F)(1), (H)(1)(e).
Section 154.052(D) states, "No person * * * shall make any exterior * * * alteration * * * on any property within the District unless a certificate of appropriateness has been issued by the [Restoration] Board." "Alter/Alteration" is defined as "[a]ny material change * * * in [the] external architectural features * * * of any property" within the District. Section 154.052(C). The term "material change" is not defined in the statute.
Section 154.052(H)(1)(a) states that the Restoration Board "shall * * * [a]dopt guidelines for the review of proposed exterior changes and establishment of standards, using as the basis the Secretary of the Interior's Standards for Rehabilitation." The ordinance states that in reviewing an application for a certificate of appropriateness, the Restoration Board "shall use the guidelines described in division (H)(1)(a)." Section 154.052(L)(3).
At trial, James Dando,[1] the city's Planning Director, admitted that the Restoration Board had not adopted guidelines for the review of proposed exterior changes, as required by Section 154.052(H)(1)(a).
Peachey argues that because the Restoration Board failed to adopt guidelines as required by the ordinance, the city and board members "can only speculate as to whether the proposal involves a material change to the exterior of a building requiring a certificate of appropriateness and whether a certificate should be granted" and thus the ordinance invites arbitrary and discriminatory enforcement.
Dando testified as follows:
 [DANDO]: * * * [T]he Board and uh our staff have always looked at material change to mean a change of materials. As an example I would offer a change of uh, slate shingles for asphalt shingles or visa versa. * * *
 DEFENSE COUNSEL * * *: What would you consider installing of flowerpots outside a window or a doorway? Would that be a material change?
 [DANDO]: Installation of a flower box could be a change to the exterior that uh, that could be reviewed but we have not in the past require[d] that.
 DEFENSE COUNSEL * * *: How about installing an air conditioner in the window?
[DANDO]: Again, we have not.
* * *
 DEFENSE COUNSEL * * *: Allright [sic], how about installing a sign[,] would you consider that a material change?
[DANDO]: Yes.
 DEFENSE COUNSEL * * *: Okay-and you indicated that these are matters that the Board * * * may consider a material change and you also indicated that I believe that even though the Board may consider installing a flower box or an air conditioner in the window a material change [that] the Board may elect not to pursue a violation * * * against someone who installed the flowerpots or a window air conditioner. Am I correct?
 [DANDO]: I believe that the distinction that has[,] well it hasn't been spoken[,] but the distinction is that those are actually furnishings rather than parts of the building.
DEFENSE COUNSEL * * *: That's your understanding.
[DANDO]: That's my understanding[,] that's correct.
Because the Restoration Board failed to adopt guidelines, the ordinance does not set forth explicit standards for those board members who apply it. Consequently, each board member is left to call upon his own idea of what "material change" means, as is shown by Dando's testimony. We do not believe that allowing board members to use their own subjective definitions of "material change" will prevent arbitrary enforcement of the ordinance.
More importantly, Dando stated that the board members considered "material change" to mean a "change of materials." Clearly, it would seem to us that a "material change" would not encompass just any change of materials at all. The ordinance explicitly defines "alternation" as any material change in the external architectural features of the property, not as any changeat all in such features.
As we stated, supra, we can never expect exact certainty from the language in an ordinance. The language must, however, be clear enough to provide explicit standards for those who apply the ordinance to prevent arbitrary and discriminatory enforcement. In this case, the Restoration Board has failed to adopt guidelines, as required by the ordinance, and thus there are no explicit standards that the board members can follow. Thus, we conclude that Section 154.052, as applied, is unconstitutional because it is void for vagueness.
The first assignment of error is sustained.
 II. TIPP CITY FAILED TO PROVE THAT MS. PEACHEY VIOLATED THE ORDINANCE BY INSTALLING AN AWNING ON THE FRONT OF THE COLDWATER CAF^E BECAUSE THE SOLE EVIDENCE SUBMITTED TO PROVE THE CHARGE WAS A COURT DOCUMENT THAT WAS NOT PROPERLY AUTHENTICATED. MOREOVER, EVEN IF THE DOCUMENT WAS PROPERLY AUTHENTICATED, IT DOES NOT ADMIT TIPP CITY'S CHARGE AGAINST MS. PEACHEY.
Because we determined, supra, that the city's ordinance is unconstitutional, we need not address this assignment of error.
The judgment of the trial court will be reversed, and the fine and assessment of court costs will be vacated.
 _____________________________ GLASSER, J.
GRADY, P.J. and YOUNG, J., concur.
(Hon. George M. Glasser, Retired from the Court of Appeals, Sixth Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
[1] The transcript from the trial misspells Dando's name as "James Standell." Other evidence in the record reveals that his name is "James Dando" and thus we will use his correct name.