RIGOBERTO VÉLEZ MEDINA y OTROS, demandantes y apelados, *v.* MUNICIPIO DE TOA BAJA, representado por su ALCALDE J. HERNÁNDEZ FERRER y OTROS, demandados y apelantes.

*Número:* O-79-36 *Resuelto:* 19 de febrero de 1980

*Laffitte & Domínguez* y *Giselle López Bajandas*, abogados del apelante Municipio de Toa Baja; *Héctor A. Colón Cruz, Procurador General*, y *Miguel A. Santana Bagur, Procurador General Auxiliar*, abogados de los demás apelantes; *Minia González Álvarez* y *Rosa Idalia Ríos Sánchez*, abogadas de los apelados.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El 6 de abril de 1978 la Asamblea Municipal de Toa Baja, Puerto Rico, aprobó la Ordenanza Municipal Núm. 23. Dicha ordenanza dispone el cierre de cafés, cafetines, bares, clubes, salas de billar y otros establecimientos en donde se vendan bebidas alcohólicas; regula la estancia de menores hasta

dieciocho años, meretrices, y personas que en estado de embriaguez puedan causar molestias en los establecimientos enumerados anteriormente; limita el uso de velloneras; y establece ciertas zonas de silencio. El título de la ordenanza municipal dispone:

"PARA REGULAR EL CIERRE DE CAFES, CAFE-TINES, BARES, CLUBES, SALAS DE BILLAR Y OTROS ESTABLECIMIENTOS EN DONDE SE EXPENDIEREN BEBIDAS ALCOHOLICAS, EL USO DE ELECTROLAS, VULGARMENTE CONOCIDAS POR VELLONERAS, ESTA-BLECER CIERTAS ZONAS DE SILENCIO, PROHIBIR LA CELEBRACION DE BAILES, CANTOS Y OTROS ACTOS CONTRARIOS A LA MORAL Y DECENCIA PUBLICA EN TALES ESTABLECIMIENTOS, LA ESTANCIA DE MENORES DE EDAD DE AMBOS SEXOS, HASTA DIE-CIOCHO AÑOS, MERETRICES Y LA DE PERSONAS MAYORES DE EDAD, QUE EN ESTADO DE EMBRIA-GUEZ PUEDAN CAUSAR MOLESTIAS EN LOS ESTA-BLECIMIENTOS ENUMERADOS ANTERIORMENTE O ALTERACIONES DEL ORDEN PUBLICO; Y PARA OTROS FINES."

La Exposición de Motivos de la citada ordenanza municipal describe los hechos que condujeron a la aprobación de dicha ordenanza y el propósito de la misma en los siguientes términos:

"Nuestra población está sufriendo grandemente la actual situación de violencia, inmoralidad, vandalismo, corrupción existente en Puerto Rico. Por cuanto una de las prioridades de nuestro gobierno municipal es velar por el orden, lograr el más alto grado de tranquilidad y sociego [sic] a lo cual tienen derecho nuestros ciudadanos. Velar por que nuestra juventud se desarrolle en el más sano ambiente de moralidad y tranquilidad.

Es necesario que en nuestra Asamblea Municipal se promulgue una ordenanza para lograr mantener la moral pública e impedir por sus disposiciones, que los cafés, cafetines, bares, clubes, salas de billar u otros establecimientos donde se expedieren [sic] bebidas alcohólicas, radicados dentro de la zona urbana y rural de esta municipalidad se mantengan abierto a ciertas horas, que por lo tarde de la noche se presten a causar molestias en dichos estableci-

mientos a los parroquianos que la frecuentan, por las personas en estado de embriaguez, así como de MERETRICES y que también entorpecen el silencio de la noche en ciertas zonas, con ruidos que se pueden considerar como innecesarios."

Los demandantes, comerciantes con negocios establecidos en el Municipio de Toa Baja, impugnan la constitucionalidad de la Ordenanza Municipal Núm. 23. El tribunal de instancia resolvió que la Asamblea Municipal no tenía autoridad para aprobarla.

La Asamblea Legislativa tiene facultad para determinar lo relativo a la organización y el funcionamiento de los municipios. Constitución del Estado Libre Asociado de Puerto Rico, Art. VI, Sec. 1. ([1]) Ejerciendo esta facultad, la Asamblea Legislativa ha creado los municipios y les ha delegado ciertos poderes mediante la Ley Municipal, Ley Núm. 142 de 21 de julio de 1960, aprobada para establecer un sistema de gobierno local para los municipios de Puerto Rico.

El Art 2 de la Ley Municipal, 21 L.P.R.A. sec. 1102, faculta a los municipios para "realizar las funciones inherentes a una corporación municipal, que no estén prohibidas por ley, y las incidentales o necesarias para el debido ejercicio de aquéllas y de las especiales que en [la Ley Municipal] se les encomiendan".

El Art. 7 de la Ley Municipal, 21 L.P.R.A. sec. 1107, dispone que "[l]os municipios tendrán plenas facultades legislativas y administrativas en todo asunto que fuere de naturaleza municipal, que redunde en beneficio de la población y para el fomento y progreso de ésta. . .".

Finalmente, el art. 29 de la Ley Municipal, 21 L.P.R.A. sec. 1171, establece que "[t]odas las limitaciones impuestas

([1]) Comentando sobre esta sección el Informe de la Comisión de Disposiciones Transitorias y Asuntos Generales sobre Asuntos Generales, *Diario de Sesiones de la Convención Constituyente*, Tomo 4, pág. 2618, ed. 1961, dice: "El propósito de esta sección es señalar con la mayor claridad que el poder del Estado Libre Asociado de Puerto Rico para estructurar el sistema municipal, lo delega en la Asamblea Legislativa de Puerto Rico. Los municipios son y serán criaturas jurídicas de la Asamblea Legislativa."

por la Constitución del Estado Libre Asociado de Puerto Rico y por la Ley de Relaciones Federales con Puerto Rico a la Asamblea Legislativa y a sus miembros, serán aplicables hasta donde fuere posible, a la Asamblea Municipal y a los miembros de la misma".

 Se desprende de los citados artículos de la Ley Municipal que la Asamblea Legislativa ha delegado a las Asambleas Municipales unos poderes amplios en asuntos de naturaleza municipal. Hemos señalado antes en *Pueblo* v. *Coto*, 24 D.P.R. 381, 382-83 (1916), y hoy reiteramos, que:

"Las condiciones de vida, la índole de los negocios, la clase de industrias no son las mismas en todas las municipalidades que integran el territorio de Puerto Rico. De ahí el motivo de conferir ciertos poderes a los gobiernos locales para prescribir medidas de orden público de acuerdo con las necesidades de cada pueblo o ciudad.

Desde luego que no podría en modo alguno prohibir un municipio lo que expresamente autoriza la legislatura [*sic*], ni autorizar lo que la legislatura [*sic*] prohiba, pero sí puede, . . . siguiendo la línea de conducta trazada por el legislador, prohibir la realización de actos de la misma naturaleza de los prohibidos por él."

Véase también *Pueblo* v. *Nochera*, 23 D.P.R. 605 (1916). Sin embargo, aun en asuntos de naturaleza municipal, la Asamblea Municipal no tiene autoridad para intervenir cuando la Asamblea Legislativa ha ocupado el campo. C. J. Antieau, *Municipal Corporation Law*, Vol. 1, sec. 2A.27 (1979).

 La intención de la Asamblea Legislativa de reglamentar la materia puede constar expresamente en la legislación estatal o puede deducirse de la naturaleza de ésta al establecer un plan o esquema detallado que abarcadoramente lo reglamente todo, demostrando la intención de ocupar el campo para sí. El que un estatuto en particular o un grupo de estatutos sean suficientemente abarcadores para demostrar que ha habido una intención de ocupar el campo, ciertamente no puede determinarse a base de una norma preestablecida. Cada caso en particular hay que considerarlo por sus propios méritos. En *People* v. *Llewellyn*, 257 N.W.2d 902, 905 (Mich.

1977), *cert.* den. *City of East Detroit* v. *Llewellyn*, 435 U.S. 1008 (1978), se especifican las normas que usualmente deben tenerse en cuenta para determinar si el Estado ha ocupado el campo, a saber:

"Primero, donde la ley estatal dispone expresamente que la autoridad del estado para reglamentar determinada materia es exclusiva, resulta claro que el estado ha ocupado el campo. [Citas omitidas.]

Segundo, la intención de la Asamblea Legislativa de ocupar el campo puede constar implícitamente en el historial legislativo de la ley. [Citas omitidas.]

Tercero, la existencia de un esquema de reglamentación estatal abarcador podría apoyar una conclusión de que el estado ha ocupado el campo. [Citas omitidas.] Aunque la existencia de un esquema de reglamentación estatal abarcador generalmente no es suficiente de por sí para inferir la ocupación del campo, es un factor que debe considerarse como evidencia de la ocupación del campo.

Cuarto, la naturaleza de la materia reglamentada puede exigir reglamentación estatal exclusiva para lograr la uniformidad necesaria para cumplir los propósitos o intereses del estado."

*In re Lane*, 372 P.2d 897 (Calif. 1962); *Tolman* v. *Underhill*, 249 P.2d 280 (Calif. 1952); *County Council* v. *Montgomery Association*, 333 A.2d 596 (Md. 1975), Nota, *Conflicts Between State Statutes and Municipal Ordinances*, 72 Harv. L. Rev. 737 (1959); *Feiler—Conflict Between State and Local Enactments: The Doctrine of Implied Preemption*, 2 Urban Lawyer, 398–408 (1971); *Recent Decision—Implied Preemption by Occupation—Local Election Ordinance Held Invalid Because State Legislation Impliedly Preempted Field*, 35 Md. L. Rev. 543–550 (1976); Nota, *Municipal Corporations, Ordinance in Conflict with General Laws: Preemption by the State of Field of Regulating Criminal Aspects of Sexual Activity*, 10 U.C.L.A. L. Rev. 440–444 (1963); Ver además *Weekes* v. *City of Oakland*, 579 P.2d 449 (Calif. 1978).

■ Al aprobar la Ordenanza Municipal Núm. 23 la Asamblea Municipal ejercitaba el poder de razón de estado (*police power*) que le delegó la Asamblea Legislativa, en esta ocasión para mantener la moral pública y la paz y tranquilidad

en el municipio. Debe tenerse presente que en *Berman* v. *Parker*, 348 U.S. 26, 32 (1954), el Tribunal Supremo de los Estados Unidos consignó que el poder de razón de estado es un poder amplio y un intento de definir su alcance y trazar sus límites resulta infructuoso pues cada caso gira alrededor de sus propios hechos, pero reconoce que su ejercicio tradicional ha sido en lo que concierne a la seguridad pública, la salud, la moral pública y la paz y tranquilidad de la comunidad.

■ Teniendo esto presente examinaremos las leyes en vigor que se alega han ocupado el campo. Valga aclarar que ya hemos resuelto que "[c]uando en el ejercicio de su poder de [razón de estado] tanto el estado como un municipio tratan de reglamentar determinada materia, la ordenanza se considerará válida a menos que sea imposible armonizarla con la ley general". *Cabassa* v. *Rivera*, 68 D.P.R. 706, 712 (1948).

■ Alegan los demandantes que aun teniendo la Asamblea Municipal una autoridad general sobre todo asunto de naturaleza municipal, la ordenanza es nula por confligir con varias leyes estatales vigentes y por reglamentar materias sobre las cuales la Asamblea Legislativa ya ha legislado. A estos efectos señalan la Ley de Bebidas, la Ley de Cierre, la legislación regulando el turismo y las leyes que protegen la calidad ambiental. Un examen de estas leyes nos lleva a concluir que la Ordenanza Municipal Núm. 23 es compatible con las mismas.

■ Examinemos primeramente la Ley de Bebidas de Puerto Rico, Ley Núm. 143 de 30 de junio de 1969, que dispone en el segundo párrafo de su Exposición de Motivos, 13 L.P.R.A. sec. 6002, lo siguiente:

"Se afirma, asimismo, que la intención y la política de esta Asamblea Legislativa es la de proteger el acervo de buenas costumbres de la comunidad puertorriqueña, y que el comercio y el expendio al público de bebidas alcohólicas se autorizará condicionado a que dichas actividades se practiquen de acuerdo con normas que tiendan a estimular hábitos de moderación y temperancia en el público consumidor, de suerte que la salud del

pueblo, el bienestar, la seguridad y tranquilidad de los habitantes de Puerto Rico queden ampliamente garantizados."

Es fácil concluir que la Ordenanza Municipal Núm. 23 es compatible con la citada ley, y de hecho la complementa supliendo las normas contempladas por dicha ley para estimular hábitos de moderación y temperancia en el público consumidor y garantizar la salud del pueblo y el bienestar, la seguridad y tranquilidad de los habitantes de Puerto Rico, según las circunstancias y necesidades particulares del Municipio de Toa Baja.

■ Veamos también la Ley de Cierre para establecimientos comerciales, 33 L.P.R.A. sec. 2201, que dispone que los establecimientos comerciales permanecerán cerrados al público durante ciertos días y horas especificados en la ley. No obstante su título, el cierre de los establecimientos comerciales fue el medio utilizado para conceder un descanso necesario a los hombres y mujeres que laboraban en una época en que no existía la jornada de trabajo ni el pago de compensación por horas extraordinarias. Ley Núm. 78 de 13 de junio de 1953, Exposición de Motivos; Op. Sec. Just. Núm. 4 de 1955. La Ordenanza Municipal Núm. 23 ni prohíbe lo que dicho estatuto autoriza ni autoriza lo que prohíbe, ya que la misma no afecta la política pública del estado en cuanto a condiciones de trabajo. Por tanto, tampoco conflige ni es incompatible la Ordenanza Municipal Núm. 23 con el propósito de la Ley de Cierre.

■ En cuanto a las leyes que regulan el turismo y las zonas turísticas, tampoco encontramos conflicto alguno. La facultad de establecer zonas de interés turístico tiene el propósito de preservar y restaurar las edificaciones en dichas zonas, materia no cubierta por la Ordenanza Municipal Núm. 23. Ley Núm. 374 de 14 de mayo de 1949, Art. 3, según enmendada, 23 L.P.R.A. sec. 163. La Ley de la Compañía de Turismo de Puerto Rico, Ley Núm. 10 de 18 de junio de 1970, según enmendada, 23 L.P.R.A. sec. 671, no tiene el efecto de invalidar, sin más, la Ordenanza Municipal Núm. 23. El

Municipio de Toa Baja no pretende reglamentar el turismo mediante la Ordenanza Municipal Núm. 23. Cualquier efecto, si alguno, que la ordenanza tenga sobre el turismo es incidental al ejercicio del poder de razón de estado para reglamentar asuntos municipales.

Por último, no se ha demostrado que no pueda armonizarse la ordenanza municipal en cuestión con las leyes estatales sobre la supresión de ruidos innecesarios. ([2])

Queda por determinar si la ordenanza aprobada constituye un ejercicio constitucionalmente permisible de una facultad delegada por la Asamblea Legislativa a la Asamblea Municipal.

▇▇▇ Los demandantes alegan ser comerciantes con negocios establecidos en el Municipio de Toa Baja. Sostienen que la Ordenanza Municipal Núm. 23 los perjudica en violación de su derecho a la igual protección de las leyes y al debido proceso de ley. Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Sec. 7. Como norma, una persona no puede impugnar un estatuto o una ordenanza municipal alegando que podría ser inconstitucional de aplicarse en circunstancias distintas a las del caso que está ante el tribunal. *Broadrick* v. *Oklahoma,* 413 U.S. 601, 610 (1972). Hay excepciones a la norma señalada pero las mismas no son aplicables en relación con estatutos de reglamentación comercial. Ver *Bates* v. *State Bar of Arizona,* 433 U.S. 350, 380 (1976); Tribe, *American Constitutional Law,* secs. 3-19, 12-28 y 12-29 (1978); *United States* v. *Mazurie,* 419 U.S. 544, 550 (1974).

En el caso de autos, al surgir la controversia sobre el poder del Municipio de Toa Baja para aprobar la ordenanza impugnada, las partes acordaron someter el caso mediante alegatos escritos. No se presentó prueba sobre los hechos específicos que motivaron la demanda ni se han estipulado los

---

([2]) Ley Núm. 155 del 15 de mayo de 1937, 13 L.P.R.A. secs. 2101 a 2108; Ley Núm. 71 del 26 de abril de 1940, 33 L.P.R.A. secs. 1443 a 1450; Ley Núm. 9 de 18 de junio de 1970, según enmendada, 12 L.P.R.A. secs. 1121 a 1142.

mismos. Igualmente desconocemos la forma en la cual las autoridades han interpretado la ordenanza al aplicarla en diferentes circunstancias.

El delicado poder de evaluar la constitucionalidad de una ordenanza municipal o un estatuto no puede ejercerse en un vacío ni en relación con situaciones de hecho hipotéticas. Ver *United States* v. *National Dairy Corp.*, 372 U.S. 29, 31–33 (1962); *United States* v. *Raines*, 362 U.S. 17, 22 (1960).

*En vista de lo anterior, se revoca la sentencia dictada por el tribunal de instancia y se devuelve el caso para ulteriores procedimientos consistentes con esta opinión.*