EL PUEBLO DE PUERTO RICO, apelado, *v.* ISRAEL HERNÁNDEZ COLÓN y VÍCTOR GONZÁLEZ, apelantes.

*Número:* CE-85-712 *Resuelto:* 11 de mayo de 1987

*Enrique González Martí, José Osvaldo Cotto Luna* y *Juan Ortiz Rodríguez,* abogados de los peticionarios; *Rafael Ortiz Carrión, Procurador General, Dora T. Peñagarícano, Procuradora General Auxiliar,* abogados de El Pueblo.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

Los peticionarios Israel Hernández Colón y Víctor M. González fueron denunciados por infringir la Sec. 4 de la Ordenanza Municipal Núm. 22 del Municipio de Cayey, aprobada el 12 de noviembre de 1973, según enmendada por la Ordenanza Núm. 35 de 4 de mayo de 1983, que "prohíbe ingerir bebidas alcohólicas o exibir [*sic*] en [*sic*] envases con contenido [*sic*] de bebidas alcohólicas en calles, plazas o sitios públicos". [1] Se les imputó que el 4 de abril de 1985, "se encontraban haciendo uso de bebidas alcohólicas en la vía pública, frente al establecimiento Boquete Liquor Store . . .".

Durante el juicio en el Tribunal de Distrito, los acusados cuestionaron la constitucionalidad de la Sec. 4 de la Ordenanza. Su planteamiento fue rechazado oralmente por el Tribunal de Distrito, y por escrito por el Tribunal Superior, al cual acudieron interlocutoriamente.

Ahora repiten su planteamiento en este Foro. Alegan en síntesis que la Sec. 4 adolece de ambigüedad y amplitud excesiva, por lo que viola sus derechos garantizados por las Secs. 1 (dignidad del ser humano), 4 (libertad de palabra), 6 (li-

---

[1] En su Sec. 21, la ordenanza castiga la conducta imputada con "multa no menor de $25.00 veinte y cinco [*sic*] dólares ni mayor de cien ($100.00) o un día de cárcel por cada dólar que deje de pagar o ambas penas a discreción del Tribunal".

bertad de asociación), 7 (debido procedimiento de ley) y 8 (intimidad) del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico y las Enmiendas I, IV, V y XIV a la Constitución de Estados Unidos.

■ La Ordenanza Núm. 22, *supra*, titulada "ORDE-NANZA PARA EVITAR, CASTIGAR Y ELIMINAR MA-LES FUNESTOS QUE PERTURBAN EL BIENESTAR DE LA COMUNIDAD CAYEYANA, Y PARA OTROS FINES", tiene como propósito, entre otros, el "mantener una sociedad tranquila, [y] morigerada" evitando "los males más comunes".[2] En *Vélez* v. *Municipio de Toa Baja*, 109 D.P.R. 369 (1980), sostuvimos la facultad de la Asamblea Municipal para, al amparo de los poderes delegados por la Asamblea Legislativa en la Ley Municipal, Ley Núm. 142 de 21 de julio de 1960, según enmendada, 21 L.P.R.A. ant. sec. 1101 *et seq.*, promulgar una ordenanza similar. En *Vélez* v. *Municipio de Toa Baja*, supra, se trataba de una ordenanza del Municipio de Toa Baja que reglamentaba las horas de cierre de establecimientos donde se vendían bebidas alcohólicas y regulaba la presencia en esos lugares de menores de edad y borrachos.[3]

---

[2] Solamente se ha cuestionado la referida Sec. 4 de la Ordenanza. Así pues, no estamos pasando juicio en esta opinión acerca de la validez de las otras prohibiciones contenidas en el estatuto municipal.

Debido a la naturaleza de la ofensa envuelta en este caso, independientemente de la validez de la ordenanza, nos preocupa la manera en que ésta se ponga en vigor. A tales efectos véase *Pueblo* v. *Tribunal Superior*, 104 D.P.R. 363 (1975), donde se acepta la práctica del procedimiento de citación en vez del arresto en casos de delitos menos graves.

[3] La misma política pública que entonces encontramos razonable, ha llevado a los organismos legislativos municipales a aprobar medidas adicionales para enfrentarse al grave problema social que constituye el alcoholismo. Véase Informe del Departamento de Servicios contra la Adicción, Edna González Cruz, "El Consumo de Alcohol en Puerto Rico", 14 de octubre de 1981.

# I

*Capacidad para impugnar la constitucionalidad de la ordenanza*

█ Como norma general, una persona no puede impugnar un estatuto a base de que éste sería inconstitucional en otras circunstancias que no son las suyas. *Vélez* v. *Municipio de Toa Baja*, supra. Los derechos constitucionales son personales y no pueden ser invocados de forma vicaria.

En *E.L.A.* v. *Aguayo*, 80 D.P.R. 552, 597 (1958), expresamos sucintamente las razones que motivaron las normas de capacidad para litigar (*standing*):

> ¿Qué fundamento tienen esas limitaciones? ¿Han sido creadas para satisfacer las exigencias de un preciosismo técnico, o están por el contrario sustentadas por una convicción, a la cual abonan la razón y la experiencia, de cómo debe ejercitarse la gravísima responsabilidad judicial de juzgar la constitucionalidad de las actuaciones legislativas? Es indudable que constituyen un mínimo de condiciones para el ejercicio discreto y tolerable de un poder que de otro modo constituiría una clara amenaza para la calidad democrática del sistema y convertiría a los jueces en guardianes de la comunidad. Factores determinantes de estas normas son la falibilidad del juicio humano, la condición negativa del poder judicial que no posee la autoridad directa que adviene a las otras dos ramas por ser electas por el pueblo, y la convicción de que la Corte perdería su influencia y prestigio y finalmente su autoridad, si, a diario, y fuera de los estrictos límites de un genuino procedimiento judicial, estuviese pasando juicio sobre la validez constitucional de las actuaciones legislativas y ejecutivas. (Escolio omitido.)

█ Por supuesto, la norma general de capacidad para litigar tiene excepciones. Hemos reconocido la capacidad de un litigante para defender los derechos de terceros que no están presentes en el caso, cuando no exista otra manera efectiva de

que los derechos de éstos sean preservados. (⁴) *Zachry International* v. *Tribunal Superior*, 104 D.P.R. 267, 271–275 (1975); *Salas Soler* v. *Srio. de Agricultura*, 102 D.P.R. 716, 723–724 (1974). También hemos reconocido otra excepción en el área de los derechos constitucionales de libertad de expresión y asociación. *Vives Vázquez* v. *Tribunal Superior*, 101 D.P.R. 139 (1973). Estatutos que intentan restringir, dificultar o prohibir el disfrute de estos derechos en los foros públicos deben fundamentarse en un interés público apremiante, y su efecto y alcance no debe ser más amplio del necesario para lograr ese propósito legítimo y convincente, según expresado por el legislador. *Rodríguez* v. *Srio. de Instrucción*, 109 D.P.R. 251, 255–256 (1979); *Mari Bras* v. *Casañas*, 96 D.P.R. 15, 23 n. 9 (1968); *Pueblo* v. *Burgos*, 75 D.P.R. 551, 570 (1953). (⁵)

---

(⁴) En términos generales, hemos señalado cuatro factores que deben ser tomados en consideración al determinar la capacidad de un litigante para invocar los derechos constitucionales de otros: "(1) el interés del litigante; (2) la naturaleza del derecho invocado; (3) la relación existente entre el litigante y las terceras personas; y (4) la factibilidad de que los terceros pueden hacer valer tales derechos en una acción independiente . . . ." *Zachry International* v. *Tribunal Superior*, 104 D.P.R. 267, 272 (1975). Por tratarse de una norma de excepción, la situación en que se pretenda emplear ha de cumplir "con la más rigurosa exigencia los cuatro elementos o factores determinantes de capacidad que antes hemos apuntado". Íd., pág. 275.

(⁵) Como corolario de este reconocimiento, en el área de los derechos constitucionales de libertad de expresión y asociación, permitimos que un litigante ataque una ley excesivamente abarcadora sin requerirle que demuestre que su propia conducta no podría ser regulada por una ley redactada de forma válida. Bajo estas circunstancias a los litigantes se les permite impugnar una ley no porque se están violando sus propios derechos a la libre expresión, sino porque la sola existencia del estatuto puede causar que otras personas que no están ante el tribunal se abstengan de hacer alguna expresión protegida constitucionalmente. *Vives Vázquez* v. *Tribunal Superior*, 101 D.P.R. 139, 146 (1973).

Esta norma requiere que se compruebe de la forma más rigurosa la existencia de los factores que hacen excesivamente abarcadora una ley. Cuando se determina que una ley es excesivamente abarcadora resulta inválida de su faz. *Mari Bras* v. *Casañas*, 96 D.P.R. 15, 24 (1968). La misma no puede ser utilizada para castigar la situación ante el tribunal y tampoco ninguna otra. Simple y llanamente, la ley es nula. El posible daño que sufre la sociedad cuando se le impide castigar una expresión perjudicial no prote-

Ahora bien, la amplitud excesiva de la ley impugnada tiene que ser sustancial en relación con el alcance legítimo que la medida pueda tener.

■ Al considerar el planteamiento de amplitud excesiva de los peticionarios hay que tener presente que si no están afectados derechos de libertad de expresión y asociación constitucionalmente protegidos, no procede examinar la ambigüedad de la Sec. 4 de la Ordenanza bajo cualquier conjunto de circunstancias. La alegada ambigüedad entonces será evaluada solamente según ha sido aplicada a los peticionarios. El análisis deja de ser uno de libertad de expresión y asociación y se convierte en uno de debido procedimiento de ley.

■ La Sec. 4 de la Ordenanza cuya validez se cuestiona no infringe derecho constitucional alguno de libertad de expresión o asociación. Los peticionarios no han hecho un intento por demostrar cuál es la idea que pretenden comunicar al ingerir o exhibir bebidas alcohólicas en la calle. No toda conducta se presume expresiva. Por lo tanto, la persona que desea llevar a cabo un acto alegadamente expresivo tiene la obligación de demostrar que está constitucionalmente protegido.

Es difícil concebir cuál es la idea que la conducta proscrita intenta transmitir, con excepción quizás de aquella conducente a la exaltación del alcoholismo, precisamente el mal social que el municipio desea evitar en los predios públicos.

■ La Asamblea Legislativa ha delegado en las Asambleas Municipales unos poderes amplios "en beneficio de la población y para el fomento y progreso de ésta . . .". Art.

---

gida pesa menos que la posibilidad de que por medio de una ley excesivamente abarcadora se penalice la expresión protegida por la Constitución. En esos casos es preferible que el Poder Legislativo redacte un estatuto menos amplio que pase el cedazo constitucional. *Vélez v. Municipio de Toa Baja*, 109 D.P.R. 369 (1980); D. Nevares-Muñiz, *Derecho Penal Puertorriqueño, Parte General*, Hato Rey, Inst. Desarrollo del Derecho, 1983, Sec. 4.4, págs. 90-92.

2.04 (16) de la Ley Orgánica de los Municipios, según enmendada, Ley Núm. 20 de 2 de julio de 1981 (21 L.P.R.A. sec. 2054 (16) ). Éstas gozan de todas aquellas facultades "incidentales y necesarias" para la consecución de ese interés, íd., Art. 4.18 (21 L.P.R.A. sec. 3068), de acuerdo con las condiciones locales imperantes. *Vélez* v. *Municipio de Toa Baja*, supra, pág. 374; *Pueblo* v. *Coto*, 24 D.P.R. 381, 382–383 (1916). Esto incluye los aspectos de "seguridad pública, la salud, la moral pública y la paz y tranquilidad de la comunidad". *Vélez* v. *Municipio de Toa Baja*, supra, pág. 376.

Sin duda, ingerir alcohol en la vía pública causa grave daño a la tranquilidad de un pueblo. Las bebidas embriagantes tienen un efecto directo sobre el comportamiento de quienes las ingieren. Los actos antisociales que con frecuencia cometen las personas bajo la influencia del alcohol perturban la paz del vecindario y generan repetidas alteraciones a la paz pública, accidentes de tránsito, violaciones a las normas que establecen los niveles máximos de ruido permitidos, altercados públicos, e incluso muertes violentas. El consumo del alcohol en la vía pública genera también gran cantidad de desperdicios sólidos —vasos, botellas y latas— con los consabidos problemas de estética y salubridad. En Puerto Rico, dada la proliferación de negocios dedicados al expendio de estas bebidas, y el gran número de consumidores de las mismas, el problema alcanza serias proporciones.[6] El Estado Libre Asociado ha decidido que sean sus municipios quienes se encarguen de atacar estos males de acuerdo con la situación imperante en cada comunidad. Unos, como Toa Baja, han decidido controlar la venta de las bebidas embriagantes. *Vélez* v. *Municipio de Toa Baja*, supra; otros, como Cayey, han decidido controlar el lugar de consumo.

---

[6] Sobre el problema del alcoholismo en general, véase Informe del Departamento de Servicios Contra la Adicción, *op. cit.*, esc. 1 de esta opinión.

La ausencia de intereses de expresión o asociación protegibles hace inaplicable en este caso la regla de sobreextensión.

## II

*La ambigüedad y vaguedad y el debido proceso de ley*

 Procedemos a analizar la alegada ambigüedad del estatuto bajo la cláusula de debido procedimiento de ley de nuestra Constitución. Al evaluar alegaciones de vaguedad en este tipo de estatuto, hemos enfatizado:

> Es doctrina conocida que la cláusula del debido procedimiento exige que el estatuto sea claro y preciso. "La norma de certeza para los estatutos que castigan delitos es mayor que la exigida para los estatutos que dependen primordialmente de sanciones civiles para hacerlos valer. *'El delito debe definirse con adecuada precisión. Debe haber una norma determinable de culpabilidad.'* Las personas de inteligencia común y corriente no deben estar obligadas a adivinar en cuanto al significado del estatuto. La vaguedad puede consistir de incertidumbre en cuanto a qué persona cubre la ley, o incertidumbre en cuanto a la norma aplicable para determinar la culpabilidad." *Pueblo* v. *Mantilla,* 71 D.P.R. 36, 40 (1950). (Citas y nota al calce omitidas; énfasis nuestro.)

Véanse también: *Vélez* v. *Srio. de Justicia,* 115 D.P.R. 533, 543–544 (1984); *Pueblo* v. *Tribunal Superior,* 104 D.P.R. 363, 366 (1975); *Vives Vázquez* v. *Tribunal Superior,* supra, págs. 144–146.

 Son varias las normas de interés público que esta doctrina intenta salvaguardar. Primero, una ley penal que sufre del defecto de ser vaga o ambigua podría ser empleada para castigar al inocente, al no proveerle un aviso adecuado de cuál es la conducta que prohíbe. La ley penal debe proveer a toda persona de inteligencia promedio una guía adecuada que le aperciba de antemano que su conducta está prohibida. *Pueblo* v. *Mantilla,* supra. Así, aunque se presume que toda persona conoce la ley, Art. 2 del Código Civil, 31 L.P.R.A. sec. 2,

ello no implica que su significado tenga que ser adivinado. Segundo, una ley penal ambigua promueve su implantación de forma arbitraria y discriminatoria, pues delega impermisiblemente en los funcionarios del orden público la determinación del alcance de la legislación. [7] Todo lo que la doctrina de la ambigüedad requiere es que se hayan establecido guías mínimas para gobernar su implantación. *In re Guzmán Géigel*, 113 D.P.R. 122 (1982) ; *Vives Vázquez* v. *Tribunal Superior*, supra. Tercero, una ley ambigua puede cohibir el disfrute de las libertades protegidas por la Constitución. Cuando esto ocurre, la ley es inconstitucional de su faz, y no solamente según ha sido implantada. *Mari Bras* v. *Casañas*, supra, págs. 15, 23. La ley es inconstitucional no por la forma en que fue empleada en el caso en particular, sino por la multiplicidad de maneras inconsistentes y arbitrarias en que podría ser utilizada en otras situaciones. Es lógico entonces que los estatutos que castigan conducta desordenada estén sujetos a unos criterios de certeza y claridad más estrictos que los usuales, y puedan ser declarados inconstitucionales de su faz aunque sea concebible alguna situación en la que puedan ser aplicados válidamente. De ordinario, no es imposible o impráctico que estos estatutos definan el delito con mucha precisión. [8] D. Nevares-Muñiz,

---

[7] Esto, sin embargo, no debe confundirse con el hecho de que "todas las leyes, aun las 'clarísimas', requieren interpretación". *Pueblo* v. *Tribunal Superior*, 81 D.P.R. 763, 788 (1960), citado con aprobación en *Vives Vázquez* v. *Tribunal Superior*, supra, pág. 145. Esto implica que tanto los magistrados como los policías y fiscales ejercen cierto grado de discreción interpretando estatutos penales al desempeñar sus funciones. El ejercicio de estas funciones interpretativas no necesariamente significa que ley sea ambigua.

[8] También en Estados Unidos, bajo las disposiciones de la Constitución federal, todos estos principios han sido considerados. *Palmer* v. *Euclid*, 402 U.S. 544, 545 (1971) ; *United States* v. *Harris*, 347 U.S. 613, 617 (1954) ; *Winters* v. *New York*, 333 U.S. 507, 515 (1948) ; *Kolender* v. *Lawsen*, 461 U.S. 357, 358, 361 (1983) ; *Shuttlesworth* v. *City of Birmingham*, 382 U.S. 87, 91 (1965) ; *Lanzetta* v. *New Jersey*, 306 U.S. 451, 453 (1939).

*Derecho Penal Puertorriqueño, Parte General*, Hato Rey, Inst. Desarrollo del Derecho, 1983, Sec. 4.4, págs. 90–92.

"[L]a letra de la ley es tan clara que hiere la retina con la intensidad de la luz." *P.R. Am. Sugar Refinery, Inc.* v. *Domenech, Tes.*, 46 D.P.R. 602, 609 (1934). Su texto quiere decir lo que dice. Se prohíbe exhibir o ingerir bebidas alcohólicas en la calle.

■ La comprensión de tal prohibición no requiere mayores explicaciones. Su alcance es abarcador. No delega en el policía, el fiscal o el magistrado los criterios para determinar cuándo ocurre una violación de la Sec. 4 de la ordenanza. Claramente, la Asamblea Municipal de Cayey no desea que las personas ingieran o exhiban bebidas alcohólicas a la vista del público. Por eso, prohibió estas actividades en la calle. Esa intención no hace ambigua la prohibición. "La regla, enunciada a menudo, de que los estatutos penales deben interpretarse restrictivamente, no exige que a las palabras de un estatuto deba dárseles su significado más limitado o que deba hacerse caso omiso de la evidente intención del legislador." *Pueblo* v. *Mantilla*, supra, pág. 44. La ordenanza ante nuestra consideración es clara y precisa. Su prohibición es fácilmente discernible, y no deja la determinación de los elementos de la ofensa al arbitrio irrestricto de las autoridades.

### III

*Arbitrariedad en la implantación de la ordenanza*

■ Los peticionarios señalan que durante las "fiestas patronales" de Cayey, la Policía no arrestó en otras ocasiones a aquellas personas que consumían alcohol en el mismo lugar en que ellos se encontraban. Esta alegación, sin más, no demuestra una aplicación arbitraria, discriminatoria e irrazonable de la ley. Desconocemos las circunstancias imperantes entonces o la veracidad del argumento. De todos modos, debe quedar claro que el debido procedimiento de ley no quita a las

autoridades su discreción para acusar. *Vélez* v. *Srio. de Justicia*, supra, págs. 544–545; *A.R.P.E.* v. *Chang Louk*, 113 D.P.R. 295, 297 (1982). Únicamente impide que esa discreción se base en las predilecciones personales irrestrictas de la autoridad policíaca, o en la conducta inexplicablemente contradictoria o activamente engañosa de los oficiales del Gobierno. Recuérdese que contra la observancia de una ley válida no prevalecerá el desuso, la costumbre o la práctica en contrario. Art. 5 del Código Civil, 31 L.P.R.A. sec. 5.

## IV

*El derecho a la dignidad y a la intimidad*

Procedemos a considerar el último planteamiento de los peticionarios, que la ordenanza les viola su derecho a la dignidad y a la intimidad.

En ocasiones anteriores, hemos tenido la oportunidad de ahondar en la definición y aplicación de estos derechos tan entrelazados. "La protección contra ataques a la honra, reputación y vida privada constituye también un principio que complementa el concepto de la dignidad humana mantenido en esta constitución. Se trata de la inviolabilidad personal . . . y amplia . . .". 4 Diario de Sesiones de la Convención Constituyente 2566 (1951), citado en *Figueroa Ferrer* v. *E.L.A.*, 107 D.P.R. 250, 258 (1978). Véanse también: *Arroyo* v. *Rattan Specialties, Inc.*, 117 D.P.R. 35 (1986); *López Vives* v. *Policía de P.R.*, 118 D.P.R. 219 (1987), opinión concurrente de la Juez Naveira de Rodón.

La prohibición del consumo de bebidas alcohólicas dispuesta por la cuestionada ordenanza no interfiere con la consciencia, la mente, los pensamientos o los sentimientos del individuo; tampoco cae dentro de la zona de autonomía e información que este derecho reconoce. Únicamente reglamenta su conducta pública, en aras de salvaguardar precisamente el

sosiego, la paz y la tranquilidad de la vida comunitaria, factores que en *E.L.A.* v. *Hermandad de Empleados*, 104 D.P.R. 436, 446 (1975), reconocimos que son parte del derecho a la dignidad e intimidad del ser humano. Por analogía con esa decisión, resolvemos que los costos psíquicos a los habitantes de la comunidad cayeyana debido a los incidentes que generan la ingestión de alcohol en la vía pública sobrepasan por mucho cualquier interés que puedan poseer los consumidores de bebidas embriagantes en ese lugar. Estos no tienen más derechos que sus vecinos.

V

*Conclusión.*

El Municipio de Cayey ha intentado hacer un balance adecuado de intereses sin tener que recurrir a una prohibición absoluta del consumo de alcohol. La ordenanza deja libre al ciudadano para deambular por las calles. También le permite consumir bebidas alcohólicas en la privacidad de su hogar, o en los predios de los negocios que se dedican a vender estos productos. Únicamente le prohíbe consumirlos en la calle, para la protección de la tranquilidad de la comunidad. Así lo expresa la Exposición de Motivos del estatuto municipal. Ese propósito está permitido por la Constitución del Estado Libre Asociado de Puerto Rico. Su virtud, deseabilidad o conveniencia no es de la incumbencia de este Foro. *Marina Ind., Inc.* v. *Brown Boveri Corp.*, 114 D.P.R. 64, 85 (1983). Nos está vedado sustituir nuestro criterio por el de la Asamblea Municipal. Tampoco podemos clasificar las leyes en odiosas o favorables, Art. 21 del Código Civil, 31 L.P.R.A. sec. 21.

Por todo lo cual, resolvemos que la Sección Cuarta de la Ordenanza Núm. 22 del Municipio de Cayey, aprobada el 12 de noviembre de 1973, según enmendada por la Ordenanza Núm. 35 de 4 de mayo de 1983, es válida desde los puntos de vista constitucionales discutidos. *Se confirma la resolución in-*

*terlocutoria recurrida y se devuelve el caso al Tribunal de Distrito, Sala de Cayey, para la continuación de los procedimientos penales contra los aquí peticionarios de conformidad con lo expresado en esta opinión. Se dictará sentencia de conformidad a lo expuesto.*

El Juez Asociado Señor Rebollo López concurre en el resultado emitiendo voto particular al respecto. El Juez Asociado Señor Hernández Denton disiente con opinión escrita. El Juez Presidente Señor Pons Núñez no intervino. El Juez Asociado Señor Negrón García se inhibió.

—O—

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

Los peticionarios fueron denunciados por violar la Ordenanza Municipal Núm. 22, Serie 1973–74, según enmendada, en particular la Sec. 4 que prohíbe "ingerir bebidas alcohólicas o exibir [*sic*] en envases con [*sic*] contenido de bebidas alcohólicas en calles, plazas o sitios públicos". Esta ordenanza, conocida como ordenanza para evitar, castigar y eliminar males funestos que perturban el bienestar de la comunidad cayeyana y para otros fines, prohíbe, entre otras cosas:

> . . . burlar, perseguir o molestar a inválidos, ancianos, dementes o cualquier ser humano.
> . . . a parejas amarteladas a conducirse en forma contraria a los valores morales de dicha sociedad.
> . . . ponerse de pie sobre los bancos de la Plaza Pública [*sic*] o dormir en ellos.
> . . . el uso de vehículos de arrastre o cualquier otro objeto de rodaje que sea para la diversión en aceras y la plaza pública, así como bicicletas, patines, etc.
> . . . hablar en tonos de alta voz entre las diez de la noche y las cinco de la mañana en calles y plazas.

Dispone dicha ordenanza, que la convicción por infringir alguna de sus secciones será castigada con multa no menor de

veinticinco dólares ni mayor de cien dólares, o un día de cárcel por cada dólar que deje de pagar o ambas penas a discreción del Tribunal.

Tanto el principio de Derecho Penal de *nullum crimen sine lege praevia*, recogido en el Art. 8 del Código Penal de Puerto Rico de 1974, (¹) como el mandato constitucional de que ninguna persona será privada de su libertad sin debido proceso de ley, Art. II, Sec. 7, Constitución del Estado Libre Asociado de Puerto Rico, proscriben las leyes vagas. D. Nevares-Muñiz, *Derecho Penal Puertorriqueño, Parte General,* Hato Rey, Inst. Desarrollo del Derecho, 1983, pág. 90. El requisito de que un estatuto sea claro y preciso es particularmente importante en estatutos de carácter penal. *Pueblo* v. *Mantilla,* 71 D.P.R. 36, 40 (1950); *Winters* v. *New York,* 333 U.S. 507, 515 (1947); *Cantwell* v. *Connecticut,* 310 U.S. 296 (1940); *Pierce* v. *United States,* 314 U.S. 306, 311 (1941).

En *Vives Vázquez* v. *Tribunal Superior,* 101 D.P.R. 139, 145-146 (1973), este Tribunal citó con aprobación las expresiones del Tribunal Supremo de Estados Unidos en *Grayned* v. *City of Rockford,* 408 U.S. 104, 108-109 (1972), a los efectos de que:

"Es un principio básico del debido procedimiento que una ley es nula por vaguedad si sus prohibiciones no están claramente definidas. Las leyes imprecisas violentan diversos valores importantes. Primero, porque asumimos que el hombre es libre para elegir entre la conducta legal e ilegal, insistimos que las leyes den a la persona de ordinaria inteligencia una oportunidad razonable para saber qué está prohibido, de modo que pueda actuar en concordancia con ese conocimiento. Las leyes imprecisas pueden engañar al inocente al no proveer un aviso adecuado. Segundo, si ha de prevenirse la apli-

---

(¹)Art. 8

"No se instará acción penal contra persona alguna por un hecho que no esté expresamente definido por la ley como delito, ni se impondrán penas o medidas de seguridad que la ley no hubiere previamente establecido.

"No se podrán crear por analogía delitos, penas, ni medidas de seguridad."—Código Penal, 1974.

cación arbitraria y discriminatoria, las leyes deben proveer normas claras para aquellos que las aplican. Una ley vaga delega, de modo no permisible, cuestiones básicas de política a policías, jueces y jurados para ser resueltas sobre bases subjetivas y *ad hoc,* con los consiguientes peligros de aplicación arbitraria y discriminatoria. Tercero, pero relacionado, cuando un estatuto impreciso 'empalma con áreas sensitivas de las libertades básicas garantizadas por la Primera Enmienda' 'opera para inhibir el ejercicio de [esas] libertades'. Los significados inciertos inevitablemente llevan a los ciudadanos a 'permanecer mucho más lejos de la zona ilegal' . . . que si las fronteras de las áreas prohibidas estuviesen claramente demarcadas. (Citas omitidas.)"

Una ley será declarada nula por vaguedad si (1) una persona de inteligencia promedio no queda debidamente advertida del acto u omisión que el estatuto pretende prohibir y penar; (2) se presta a la aplicación arbitraria y discriminatoria, y (3) interfiere con el ejercicio de derechos fundamentales garantizados por la Constitución. *Papachristou* v. *City of Jacksonville,* 405 U.S. 156, 162 (1971); *Winters* v. *New York,* supra, pág. 515; *Lanzetta* v. *New Jersey,* 306 U.S. 451, 453 (1938); *Connally* v. *General Construction,* 269 U.S. 385, 391 (1926); *Herndon* v. *Lowry,* 301 U.S. 242, 264 (1936); *United States* v. *Harris,* 347 U.S. 612, 617 (1954); *Kolender* v. *Lawson,* 461 U.S. 352, 357–358 (1982); *Pueblo* v. *Mantilla,* supra, pág. 40; *Meléndez* v. *Tribunal,* 90 D.P.R. 656, 661 (1964); *Vives Vázquez* v. *Tribunal Superior,* supra; Amsterdam, *The Void for Vagueness Doctrine in the Supreme Court,* 109 U. Pa. L. Rev. 67 (1960); Nevares, *op. cit.;* D. Nevares-Muñiz, *Código Penal de Puerto Rico, revisado y comentado,* San Juan, Rev. C. Abo. P.R., 1986, pág. 17; L. Tribe, *American Constitutional Law,* 2da ed., Nueva York, The Foundation Press, 1988, Secs. 12–28, pág. 718; R. Rotunda, J. Nowak, J. Young, *Treatise on Constitutional Law,* St. Paul, Minnesota, West Publishing Co., 1986, Vol. 3, Sec. 20.9, págs. 34–36.

La ordenanza municipal aquí impugnada no puede superar el ataque por vaguedad a menos que mediante una interpretación judicial limitemos y aclaremos su alcance y superemos sus defectos constitucionales. Contrario a la buena metodología judicial, la opinión del Tribunal acepta la constitucionalidad de la ordenanza en su sentido más amplio. La ordenanza en general adolece de vaguedad en la medida en que no describe en forma adecuada lo que son "sitios públicos". Cuando se utiliza lenguaje general sin delimitarse adecuadamente de manera que el estatuto proscribe no sólo la conducta que en efecto se desea castigar, sino que también prohíbe conducta que podemos presumir no se considera delictiva, estamos ante un estatuto nulo por vaguedad. *Winters* v. *New York*, supra, pág. 516. Además de en las calles y la plaza pública, ¿en qué otros sitios públicos prohíbe la ordenanza que se ingieran o se exhiban envases de bebidas alcohólicas? ¿Son sitios públicos para propósitos de la ordenanza el parque de béisbol, la orilla de un río?; ¿se considera que el que conduce su auto y lleva en él envases de bebidas alcohólicas actúa en contravención a la ordenanza?, y si se estaciona el automóvil en la vía pública, y a plena vista se puede ver que en el mismo hay bebidas alcohólicas, ¿debe entenderse que el dueño del auto está exhibiendo envases de bebidas alcohólicas?, y aquel que va caminando a su casa y lleva bebidas embriagantes que acaba de comprar para ingerir en su hogar, ¿puede ser detenido camino a su casa por violar la ordenanza?

No es posible sostener como válida una ordenanza que obliga a ciudadanos de inteligencia promedio a adivinar el significado del estatuto, a hacer conjeturas sobre qué conducta está prohibida. Además, la Ordenanza Núm. 22 del Municipio de Cayey se presta para que mediante su aplicación discriminatoria los agentes del orden público persigan a grupos de personas que no gozan de su simpatía. *Kolender* v. *Lawson*, supra, pág. 360.

El Municipio de Cayey tiene un reconocido poder de aprobar medidas con el propósito de controlar los problemas sociales que le aquejan. Independientemente del legítimo propósito que tenga un municipio al aprobar una ordenanza, ésta debe ceñirse a los mandatos constitucionales. En un sistema constitucional como el nuestro, donde se le garantiza al individuo su libertad dentro de un esquema legal que persigue mantener un orden social, las intervenciones del estado con la libertad de las personas no deben ser arbitrarias o discriminatorias.

La opinión emitida por este Tribunal valida una ordenanza que por su vaguedad atenta contra el derecho a la libertad consagrado por nuestra Constitución y la de Estados Unidos de América.

Por las razones expuestas anteriormente, disiento.

—O—

Voto particular del Juez Asociado Señor Rebollo López.

Concurrimos en el resultado al que llega el Tribunal en el presente caso por cuanto entendemos que la modalidad, bajo la Ordenanza Municipal Núm. 22 del Municipio de Cayey, por la cual específicamente se procesa a los acusados apelantes —*ingerir* bebidas alcohólicas en la *vía pública* del citado municipio— es una cuya validez es incuestionable. Tenemos reparo, sin embargo, a la "necesidad" de los pronunciamientos que hace una mayoría de este Tribunal respecto a la validez de las otras modalidades que penaliza la referida ordenanza, las cuales no están en controversia.