# 2006 DTA 45

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL VI**

ÁNGEL ORTIZ RIVERA D/B/A PERICO'S PUB
Demandante-Apelante

v.

MUNICIPIO DE SAN JUAN, *ET ALS*
Demandados-Apelados

Núm. KLAN-2004-00781

San Juan, Puerto Rico, a 8 de febrero de 2006

Panel integrado por su Presidente, el Juez Urgell Cuebas,
y los Jueces Rodríguez Muñiz y Morales Rodríguez

Morales Rodríguez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Este recurso impugna la validez de un código de orden público. Alega que no se siguió el proceso requerido por la Ley de Municipios Autónomos y que sus provisiones violan nuestra Constitución en varios extremos. Aquí se impugna una legislación de altísimo interés público. Una hecha para la restauración de vecindarios que se han deteriorado por una concepción desvirtuada de la libertad. La más reciente exposición del hecho que motivó la legislación cuestionada es el mejor criterio para su evaluación:

*"En los últimos años, los centros urbanos tradicionales y los lugares donde existe una gran concentración de actividades se han deteriorado, y se han creado problemas de orden y convivencia. Esta situación ha tenido un impacto negativo en la calidad de vida de los ciudadanos. (...) [P]ara rescatar y convertir los centros urbanos y sus alrededores en lugares atractivos para vivir, trabajar y divertirse, así como para fomentar un desarrollo urbano ordenado en armonía con el ambiente natural, es preciso crear y propiciar un ambiente seguro, atractivo y agradable. (...) Los Códigos de Orden Público (...) han demostrado ser un mecanismo efectivo y exitoso para lograr y propiciar un ambiente de orden y seguridad, rescatándose así los espacios públicos para el residente y la comunidad en general. Su observancia ha restaurado la seguridad de las familias, ha permitido a nuestros niños y jóvenes disfrutar de un entretenimiento sano y ordenado, con respeto hacia los residentes, y ha devuelto la ciudad a los ciudadanos de todas las edades. (...) El principio de participación ciudadana es fundamental **para garantizar el éxito y la eficacia de los Códigos de Orden Público.**"* (Énfasis nuestro)

La clave de interpretación de esa ley, está en esa exposición de motivos. El asunto es rescatar un ambiente de orden y seguridad en los espacios públicos. Posibilitar, dicho de otra forma, que se pueda reconstruir el tejido humano que los cuide y los use para una vida más sana en comunidad. Para lograr ese propósito, tan meritorio y urgente, hay una fórmula de efectividad probada: la participación ciudadana, el compromiso de los residentes de los lugares afectados, para hacer efectivas las medidas de rescate social. La primera definición del alcance y objetivos de la Ley apunta hacia los negocios de *"expendio y consumo de bebidas alcohólicas"*. Se les considera entre los causantes principales *"del deterioro en la calidad de vida"*, Art. 2.008 (d), 21 L.P.R.A. sec. 4058 (d). Con esa clara base legislativa abordamos el alegato del apelante Ángel Ortiz Rivera.

Don Ángel es el dueño de un negocio de expendio y consumo de bebidas alcohólicas que opera bajo el nombre de Perico's Pub. El sector en el que está establecido dicho negocio, quedó cobijado por el Código de Orden Público, Ordenanza Núm. 11, Serie 2003-2004 (en lo sucesivo el Código) del Municipio de San Juan (en adelante el Municipio).

El asunto es que el Municipio abrió el proceso de consultas y vistas para establecer el Código y, al principio, no contempló el área de la Avenida Américo Miranda donde está Perico's Pub. Conducido gran parte del proceso de consulta con los residentes, comerciantes y asociaciones de base comunitaria, el Municipio añadió el área de la Avenida Américo Miranda, donde está el negocio, como una que necesitaba atención. Según el alegato de don Ángel, sólo una ciudadana propuso dicha extensión. Don Ángel estuvo ajeno al proceso, ya que al principio no le afectaba. Cuando él supo de la posibilidad de que se extendiera la medida a su territorio, acudió a la oficina a cargo en el Municipio y ésta le informó que su área no estaba incluida. Cuando el Municipio concluyó finalmente su proceso con una vista pública, incluyó el área de la Avenida Américo Miranda donde se encuentra el Perico's Pub, y no le notificó a don Ángel el cambio. El Municipio había hecho una convocatoria amplia en medios de comunicación para la vista. Pero don Ángel alega que fue insuficiente. Después supo que un oficial del Municipio dio instrucciones para que se citara *"más residentes que comerciantes"* a esa vista.

El Código fue aprobado con las siguientes provisiones que afectan directamente a Perico's Pub:

*"PROHIBICIÓN DE VENTA Y/O EXPENDIO DE BEBIDAS ALCOHOLICAS: toda persona que venda y/o expenda bebidas alcohólicas desde las doce (12:00) de la media noche hasta las siete (7:00) de la mañana incurrirá en falta y convicta que fuere, estará sujeta al pago de una multa administrativa de Mil Dólares ($1,000.00). Disponiéndose, que si la venta y/o expendio se realiza en un establecimiento comercial, el dueño de dicho establecimiento podrá solicitar una certificación al Director del Departamento de Policía y Seguridad Pública del Municipio de San Juan, a los efectos de que éste último determine que dicha operación no afecta la tranquilidad y el pacífico vivir de los vecinos en el área, en cuyo caso, estos establecimientos podrán continuar con la venta y/o expendio de bebidas alcohólicas los jueves, viernes y sábados hasta las dos (2:00) de la mañana del próximo día. Disponiéndose, además, que cuando el lunes sea día feriado, el día domingo podrán continuar con la venta y expendio de bebidas alcohólicas hasta las dos (2:00) de la mañana del lunes. En estos casos, la prohibición que establece el párrafo primero de este artículo aplicará de dos y un minuto (2:01) de la mañana hasta las siete (7:00) de la mañana. El resto de los días la prohibición será conforme al párrafo primero de este artículo. El horario extendido se permitirá sólo en aquellas áreas que sean esencialmente de uso comercial.*

*PROHIBICIÓN DE VENTA Y/O EXPENDIO DE BEBIDA ALCOHOLICA EN ENVASE DE CRISTAL O ENVASE ORIGINAL*

*Toda persona que venda, sirva o expenda para consumo en el establecimiento comercial, cualquier tipo de bebida alcohólica, en envases de cristal o en su envase original, incurrirá en falta y convicta que fuere, estará sujeta al pago de una multa administrativa de Mil Dólares ($1,000.00). Se excluyen de esta disposición, y por lo tanto quedan exentas de las mismas, los hoteles, hospederías y restaurantes debidamente autorizados por las Agencias de Gobierno Estatal y Municipal correspondientes. Disponiéndose, que aquel tipo de bebidas*

*alcohólicas, entiéndase vinos, champagne y otros análogos, que por su naturaleza tradicionalmente se sirven en envases de cristal tales como copas y similares, podrán servirse en este tipo de envase siempre que el envase permanezca dentro del establecimiento en todo momento y la bebida sea consumida sentado en una mesa o barra."*

Vigente ya el Código, el policía municipal Gilpimar Galíndez, junto a otros dos oficiales, daba rondas de vigilancia preventiva por el área de la Avenida Américo Miranda, a eso de los 2:30 AM. Vio una concentración de gente dentro del Perico's Pub. Estaban consumiendo bebidas. *"[N]os dio el motivo fundado para pensar y presumir –declaró en la vista en su fondo—, que se estaba violentando alguna disposición del Código".* Pidió ver al encargado con el fin de entrar a verificar lo de las bebidas. Vino don Ángel Ortiz y no se lo permitió. El oficial llamó entonces a su supervisor con el propósito de que dialogara con don Ángel *"para llegar a un acuerdo".*

Tras este incidente, don Ángel presentó la demanda a la que se sustrae este recurso. Alegó que el Código es *ultra vires* porque se aprobó sin cumplir con el requisito de dar participación de comerciantes del área que dispone la Ley de Municipios Autónomos, Art. 2.008 (e), 21 L.P.R.A. sec. 4058(e). Alegó además que el Código viola el debido proceso de ley sustantivo, adolece de vaguedad y carece de protocolos para las intervenciones. El Tribunal de Primera Instancia, luego de escuchar la prueba de don Ángel en tres días de vista en su fondo, acogió una moción del Municipio para que desestimara la causa por insuficiencia de prueba.

Ante nosotros, don Ángel alega que el Tribunal cometió seis errores: (1) *"descartar nuestro planteamiento de que el Art. 2.008, de la Ley de Municipios Autónomos, constituye una limitación a los poderes y facultades generales de los Municipios para aprobar Códigos de Orden Público al imponerle un debido proceso de ley que tienen que cumplir al implementar un Código de Orden Público. (...) (2) concluir que no se presentó prueba directa o circunstancial que demuestre que la instrucción del Coronel Adalberto Mercado a la Gerente de los Códigos de Orden Público del Municipio de San Juan Inés Brackley Jones, "que citara más residentes que comerciantes por ser políticamente mejor", que dicha instrucción viciara el procedimiento (...), (3) interpretar que la definición territorial del Código no padecía de ambigüedad cuando la controversia que plantearon los demandantes y su prueba demuestra que los cambios constantes en la delimitación territorial, antes de la aprobación del Código violaron los derechos de participación (...), (4) al no declarar inconstitucional bajo la cláusula del debido proceso de ley, la totalidad de los Artículos 13.01 y 13.11 del Código (...), (5) resolver que la parte demandante no tiene capacidad jurídica para impugnar la constitucionalidad del Art.13.15 del Código de Orden Público de Puerto Nuevo y en su consecuencia no resolver que dicho artículo infringe el derecho a la libre expresión (...), y (6) al no reconocer que en la aplicación del Código se está atentado contra el Art. II de la Sección 10 de la Constitución del Estado Libre Asociado de Puerto Rico, ya que no establece los procedimientos y protocolos que los guardias municipales deben seguir."*

Las alegaciones sobre errores se pueden analizar en dos grupos: las que tienen que ver con la participación requerida por ley y las que tienen que ver con alegadas violaciones constitucionales. Estas últimas plantean tres asuntos: vaguedad y ambigüedad en el Código, violación de la libertad de expresión y falta de guías suficientes para la intervención policíaca. Así las abordaremos.

## I La participación requerida por ley

Se nos plantea, en el primer señalamiento de error, que el requisito de participación ciudadana contenido en la citada Ley de Municipios Autónomos para la formulación de códigos de orden público, establece un diseño que tiene rango de debido proceso de ley. En el segundo señalamiento se nos plantea que una instrucción al efecto de que se provoque más participación de residentes que comerciantes vició ese debido proceso de ley requerido. En el tercer señalamiento de error se nos plantea que los cambios en la delimitación territorial de Código, violaron los *"derechos de participación"* de los comercios en el área de la Avenida Américo Miranda, por haber sido incluida en el último momento.

De entrada, debemos establecer el criterio con el cual se evalúan estos señalamientos. Por su naturaleza, este caso se debe evaluar a la luz de las normas de derecho administrativo. Se trata de una delegación de poderes de la legislatura estatal a las legislaturas municipales para el establecimiento de una reglamentación bajo el poder de razón del Estado. Sobre la validez de esa delegación, véase *Vélez v. Municipio de Vega Baja*, 109 D.P.R. 369, 374 (1980). Pero no podemos referirnos a la Ley de Procedimiento Administrativo Uniforme (LPAU) –que da pautas mínimas sobre los procesos reglamentarios—, porque ésta excluye expresamente a los municipios de su aplicación, 3 L.P.R.A., sec. 2102 (a) (5). Hay una doctrina general trillada y vigente —citada con aprobación recientemente en *Asociación de Farmacias de la Comunidad v. Departamento de Salud*, resuelto el 5 de febrero de 2002, 2002 JTS 18— que nos sirve de guía. Fue establecida justo antes de la vigencia de la LPAU:

La función de los tribunales generalmente ha de ir dirigida a evaluar: 1) si la actuación administrativa está autorizada por la ley; 2) si se delegó poder de reglamentación; 3) si la reglamentación promulgada está dentro de los amplios poderes delegados; 4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley orgánica y de las leyes especiales; y 5) si la reglamentación es arbitraria o caprichosa. *Marketing and Brokerage Specialists, Inc. v. Departamento de Agricultura*, 118 D.P.R. 319, 326 (1987).

En este caso ante nuestra consideración, existe una ley que faculta a los Municipios a hacer códigos de orden público. El Municipio tenía, de conformidad con esa ley una delegación para reglamentar la conducta social, como en este caso lo hizo, dentro de los amplios poderes que le fueron otorgados. Quedan pues verificados los tres primeros criterios de la citada jurisprudencia. Faltaría estudiar si se cumplen los últimos dos. Examinaremos primero si al aprobarse el Código se cumplió con las normas procesales de la ley en el asunto de la participación requerida; después veremos si el Código es arbitrario.

Vistos los planteamientos de esta apelación, el asunto del seguimiento de normas procesales es de hermenéutica. Tenemos que interpretar el requisito estatuido. Fijar así el contenido específico del proceso, para poder verificar si se siguió.

Como adelantamos al comienzo de esta Sentencia, el requisito de participación de la comunidad en la formulación de un código de orden público, tiene un sólo propósito establecido. Se describe como un *"principio de participación ciudadana"* que es *"fundamental"* para *"garantizar el éxito y la eficacia de los Códigos de Orden Público."* Se infiere claramente que el propósito es involucrar temprano a la comunidad en el proceso de formular un código para que lo haga suyo y lo apoye y se asegure, para beneficio de sí misma, de su implantación. Es lo que llaman en inglés *"empowerment"*; se traduce al español –después de la incorporación del verbo en el Diccionario de la Real Academia Española—, como empoderar; nuestro genial filósofo Eugenio María de Hostos, hace dos siglos, llamaba a la propuesta para que una comunidad haga suyo algo, prohijar. La Ley de Municipios Autónomos quiere que los municipios logren prohijar códigos de orden público en las comunidades afectadas por el desenfreno social. Quiere que, al momento de establecer esos códigos, las comunidades se empoderen, que se sientan a cargo de sus espacios vitales y los llenen con actividad sana, en vez de dejarlos disponibles a la barbarie. Tomamos conocimiento judicial de que el desenfreno social es un fenómeno mundial que enfrentan los pueblos de todos los continentes.

La ley citada no crea un proceso formal o informal que otorgue derechos a los comercios afectados por la reglamentación que finalmente contenga un código. En este caso ante nuestra consideración, la Ley de Municipios Autónomos, en su Art. 2.008, incisos (c) y (e), 21 L.P.R.A. sec. 4058 (c) y (e), establece el cómo y para qué de esa participación:

*"El establecimiento de los códigos de orden público se basa en la participación del gobierno municipal en conjunto con los distintos grupos que componen la comunidad. **Estos identificarán las áreas afectadas, discutirán los problemas particulares de las mismas y evaluarán las alternativas para resolverlos.***

...

*Requisitos para su adopción. La elaboración e implantación de los códigos de orden público que se adopten conforme a lo dispuesto en esta sección deberán cumplir con los siguientes requisitos: (1) Garantizar la participación de los ciudadanos, residentes, asociaciones de residentes, consejos vecinales, comerciantes, autoridades de orden público y otros grupos con interés comunitario, **a través de consultas o vistas públicas en la identificación de aquellas áreas y situaciones que ameriten el establecimiento de los códigos...***". (Énfasis suplido).

Se puede observar cuán claro queda en ese texto legal el cómo de la participación ciudadana que requiere la ley: *"a través de consultas y vistas públicas"*. También es claro el para qué: (1) para identificar las áreas afectadas, (2) discutir los problemas particulares, y (3) evaluar las alternativas de solución. Cuando se refiere a *"identificar las áreas afectadas"*, se impone la pregunta, ¿afectadas por qué cosa? El mismo artículo citado, en su inciso (d), nos dice que son las afectadas por *"el deterioro en la calidad de vida"*. Y, como señalamos antes, su primer blanco de ataque es el *"expendio y consumo de bebidas alcohólicas"*.

Dicho de otra forma, está claro en la ley –tanto en la exposición de motivos que citamos al principio de esta Sentencia como en su parte dispositiva—, que el asunto medular de la participación ciudadana es ayudar a un municipio que quiera establecer un código de orden público, a identificar las áreas afectadas por el deterioro social; y destaca especialmente aquellas donde operan negocios dedicados al *"expendio y consumo de bebidas alcohólicas"*; todo, según habíamos citado antes, *"para garantizar el éxito y la eficacia de los Códigos de Orden Público"*. A eso nos remite también el último número de la lista de requisitos para la adopción de un código: *"Asegurar que la delimitación de las áreas en las que regirá el código esté definida de forma clara y precisa"*. Que no vaya a ser que se quede una fuera.

Es transparente el hecho de que en este caso ante nuestra consideración, hubo una amplia consulta, utilizando varios medios —todos eficaces— para convocar asociaciones de residentes y comerciantes del área afectada y ciudadanos particulares. Fue tan efectiva la convocatoria que don Ángel se enteró a tiempo y fue a investigar si a su negocio quedaría afectado por el Código entones sólo en proyecto. El Municipio hizo sustanciales esfuerzos para *"garantizar la participación ciudadana"* y delimitar, *"en forma clara y precisa"*, las áreas afectadas por el deterioro señalado. Como parte del proceso surgió la necesidad de incluir dentro del área del Código de Puerto Nuevo a la urbanización Reparto Metropolitano hasta la Avenida Américo Miranda. La participación ciudadana que contempla la ley —aunque sólo fuera identificada por la mención que hiciera una sola ciudadana de las que participó—, rindió su esperado fruto. No se esperaba otro.

Sin embargo, don Ángel interpreta que la ley citada creó un derecho de participación a su favor. Cita a *Hernández García v. J.R.T.* 94 D.P.R. 22, 29 (1967), y *García v. Adm. del Derecho al Trabajo* 108 DPR 53, 56 (1978), los cuales reiteran la doctrina del derecho administrativo que establece que una vez una agencia administrativa crea un reglamento debe ceñirse a sus disposiciones. *Mutatis mutandis* si una ley crea un proceso, hay que seguirlo. Pero, como don Ángel ata ese derecho que él encuentra en la Ley de Municipios Autónomos, al debido proceso de ley, debió citar más bien a *Pueblo v. Vega,* 148 D.P.R. 980, 988 (1999). Éste establece que cuando una ley crea ciertos tipos de derechos de proceso que no están establecidos como tales en la Constitución, éstos pasan a formar parte del debido proceso de ley. Se refería ese precedente a la creación de un derecho — establecido en la Regla 23 de las de Procedimiento Criminal— a presentar prueba durante la vista preliminar en casos criminales; el Tribunal Supremo entiende que ese derecho abarca el de presentar prueba mediante la citación compulsoria de testigos. Dijo allí nuestro Tribunal Supremo que *"tal derecho no es liviano"*. Dictaminó que cuando por ley se crean esta clase de derechos, pasan a formar parte del debido proceso de ley.

Sin embargo, en este recurso el proceso que se crea por ley, como hemos visto, no es para la defensa de derechos o intereses particulares de un negocio que se afecta con las disposiciones de un código de orden público.

La exigencia de participación ciudadana que se crea allí —que tampoco es liviana—, se establece para garantizar que estos códigos rijan las áreas afectadas de forma clara y precisa, para controlar entre otras cosas *"el expendio y consumo de bebidas alcohólicas"*. Por lo tanto, forzoso es concluir que, aunque don Ángel se enteró tarde de la extensión del Código a su área, se siguió el proceso creado por la Ley de Municipio Autónomos y, como dijimos antes, se obtuvo el fruto deseado.

El Código implantado por el Municipio se hizo para reglamentar áreas de Puerto Nuevo y la urbanización Reparto Metropolitano. Establece condiciones y prohibiciones aplicables a todos los negocios como Perico's Pub, no aplicables sólo a éste. Allí no se adjudicó la conducta personal de don Ángel, ni se limitó su negocio individualmente. Todos los competidores de Perico's Pub en el área se afectan igualmente. Si el Código hubiese fijado condiciones individuales para Perico's Pub, el debido proceso de ley hubiese venido en su asistencia para otorgarle un derecho a algún tipo de vista, con notificación personal previa, en algún momento antes de adjudicarse su caso individual finalmente. Véase D. Fernández Quiñonez, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* FORUM, 2002, pág. 320. Pero ese no fue el caso. Aquí se estudiaron hechos legislativos no hechos adjudicativos. Es vieja, trillada y vigente la jurisprudencia que parte de *Godreau & Co. v. Com. Servicio Público*, 71 D.P.R. 649, 653 (1950):

Siempre y cuando que los reglamentos sean verdaderamente generales, no puede existir objeción válida a este método de promulgarlos. La razón es que toda vez que los reglamentos generales son legislativos en su naturaleza, la Legislatura no viene obligada a proveer una vista cuasijudicial antes de su aprobación.

Nos queda un quinto criterio para la revisión del proceso de formulación del Código según *Marketing and Brokerage Specialists, Inc., supra*: *"si la reglamentación es arbitraria o caprichosa."* Don Ángel señala como un vicio del procedimiento seguido en la formulación del Código, el que se diera instrucciones para que en la convocatoria de participación ciudadana se citaran más residentes y menos comerciantes por ser *"más ventajoso políticamente"*. Hace alegación de arbitrariedad.

No nos hacemos de ilusiones. La frase *"más ventajoso políticamente"*, en referencia a la convocatoria para la participación en el proceso del Código, no debe haberse referido al seguimiento de la política pública contenida en la ley. Pero coincide con ella. Era más apropiado desde el punto de vista de la política sobre la participación ciudadana definida en la ley, poner más énfasis en el concurso de los residentes que de los comerciantes. Aunque la destinataria de la instrucción —la testigo Inés Brackley Jones— siguiera esa pauta —cosa que, según el juzgador de los hechos, no quedó demostrado por la prueba ante él desfilada—, eso en nada pudo viciar un proceso que quiere prohijar una solución de un problema social en la comunidad. La ley, como hemos visto quiere empoderar, incorporar —por razones obvias— a los residentes en las áreas afectadas, para que se comprometan en la implantación del Código, con particular interés en los límites a los comercios que expenden bebidas alcohólicas.

El Tribunal de Primera Instancia concluyó, como cuestión de hecho, que no se probó un impacto real de aquella instrucción. Nos acogemos a su observación de la prueba testifical, ya que no vemos en este caso ni asomo de prejuicio o parcialidad del juzgador de los hechos al aquilatar la prueba ante él desfilada.

## II Planteamientos constitucionales

Se nos plantea que haya vaguedad y ambigüedad en el Código por el uso de una palabra no conocida, *"expenda"*. También que se afecte la libertad de expresión en la parte donde el Código limita el permiso de expendio de bebidas en envases de cristal a negocios en donde los clientes las consumen sentados. Por último, se impugna la ausencia de un protocolo de instrucciones a los agentes del orden, lo cual posibilita registros y allanamientos irrazonables que violen los derechos de don Ángel y su Perico's Pub.

Mucho antes de surgir la idea de establecer códigos de orden público, con incorporación de las comunidades afectadas, los municipios controlaron el *"expendio y consumo de bebidas alcohólicas"*. Nuestro Tribunal Supremo evaluó hace casi veinte años la validez constitucional de ordenanzas municipales como las del Código, aquí cuestionado. En *Pueblo v. Hernández Colón*, 118 D.P.R. 891, 900 (1987) dijo:

*"Las bebidas embriagantes tiene un efecto directo sobre el comportamiento de quienes las ingieren. Los actos antisociales que con frecuencia cometen las personas bajo la influencia del alcohol perturban la paz del vecindario y generan repetidas alteraciones a la paz pública, accidentes de tránsito, violaciones a las normas que establecen los niveles máximos de ruido permitidos, altercados públicos, e incluso muertes violentas. El consumo del alcohol en la vía pública genera también gran cantidad de desperdicios sólidos —vasos, botellas y latas— con los consabidos problemas de estética y salubridad. En Puerto Rico, dada la proliferación de negocios dedicados al expendio de estas bebidas, y el gran número de consumidores de las mismas, el problema alcanza serias proporciones. El Estado Libre Asociado ha decidido que sean sus municipios quienes se encarguen de atacar estos males de acuerdo con la situación imperante en cada comunidad."*

La jurisprudencia citada viene al punto porque atendió planteamientos similares a los que aquí se traen a colación. Se abordó allí un planteamiento de vaguedad o ambigüedad y se reiteró el criterio tradicional de evaluación:

*"Primero, una ley penal que sufre del defecto de ser vaga o ambigua podría ser empleada para castigar al inocente, al no proveerle un aviso adecuado de cuál es la conducta que prohíbe. La ley penal debe proveer a toda persona de inteligencia promedio una guía adecuada que le aperciba de antemano que su conducta está prohibida. [Cita omitida]. Así, aunque se presume que toda persona conoce la ley, Art. 2 del Código Civil, 31 L. P.R.A. sec. 2, ello o implica que su significado tenga que ser adivinado. Segundo, una ley penal ambigua promueve su implantación de forma arbitraria y discriminatoria, pues delega impermisiblemente en los funcionarios del orden público la determinación del alcance de la legislación. Todo lo que la doctrina de la ambigüedad requiere es que se hayan establecido guías mínimas para gobernar su implantación. [Citas omitidas]. Tercero, una ley ambigua puede cohibir el disfrute de las libertades protegidas por la Constitución. Cuando esto ocurre, la ley es inconstitucional de su fax, y no solamente según ha sido implantada.*

*Se nos pide, en primer lugar, que a la luz de esos principios juzguemos la validez constitucional del citado Artículo 13.11 del Código. Se centra la impugnación en la frase "toda persona que venda o expenda bebidas alcohólicas". El problema, según el alegato, es la palabra "expenda". Se nos dice que los testimonios vertidos interpretaron que la conducta prohibida era vender; y así se define en el Código, Art. 13.01 (40). Pero la representación legal de don Ángel no halló "expenda" en el diccionario. Y se pregunta si la prohibición "se refiere al acto propio del traspaso o al consumo del traspaso".*

De entrada, encontramos que la palabra *"expenda"* es el futuro imperfecto del modo subjuntivo del verbo expender. ■ Expender aparece definido en el Diccionario de la Real Academia Española como *"vender efectos de propiedad ajena; vender al menudeo"*. María Moliner, en su *Diccionario de uso del español* lo define como vender al por menor, despachar. La definición del Código coincide específicamente con esas definiciones autoritativas. Y no vemos contradicción entre esas definiciones de los diccionarios y la que nos da el Código, con la de los testimonios citados por don Ángel. En síntesis, don Ángel sabe o debe saber que expender es sinónimo de vender o despachar o traspasar por venta al detal o al menudeo bebidas alcohólicas y que esa conducta le está prohibida. Según el Código le está prohibida esa conducta a toda persona entre las 12:00 de la media noche hasta las 7:00 AM, a menos que se trate de un comercio como Perico's Pub, el cual podrá solicitar permiso para atenerse a otras pautas más flexibles, siempre y cuando el Municipio concluya *"que dicha operación no afecta la tranquilidad y el pacífico vivir de los vecinos del área"*.

Más allá del juego semántico y retórico —imaginativo por demás—, del alegato estudiado, podemos afirmar

aquí como lo ha hecho el Tribunal Supremo varias veces que *"la letra [del Código] es tan clara que hiere la retina con la intensidad de la luz"*. En *Pueblo v. Hernández Colón, supra,* pág. 903, esa frase se citó en relación al texto de una ordenanza que prohibía *"exhibir o ingerir bebidas alcohólicas"*. Aquí nos sirve para validar un texto, claramente definido, que prohíbe vender o expender y despachar *"mediante compraventa o a título gratuito bebidas alcohólicas"* en ciertas horas. Queda claro que a Perico's Pub le está prohibido también el llamado *"happy hour"* durante las horas en que se prohíbe el expendio de bebidas alcohólicas. Podemos afirmar aquí, como lo hizo el Tribunal Supremo en la jurisprudencia citada, que *"la comprensión de tal prohibición no requiere mayores explicaciones. Su alcance es abarcador. No delega en el policía, el fiscal o el magistrado los criterios para determinar cuándo ocurre una violación"*.

El Tribunal de Primera Instancia declaró anticonstitucional la prohibición de *"facilitar o de cualquier otra forma o manera hacer o permitir que otra persona o personas puedan consumir bebidas alcohólicas"*. Coincidimos en que parece adolecer de amplitud excesiva o sobre extensión (*"overbreadth"*). Se nos ha advertido que la doctrina de amplitud excesiva (aplicada a casos de libertad de expresión), y las de vaguedad o ambigüedad (aplicadas a casos en que se reclama el debido proceso de ley), se confunden. En *In re: Guzmán Géigel,* 113 D.P.R. 122, 129, nos dice el Tribunal Supremo:

*"La doctrina de la ambigüedad o imprecisión se ha desarrollado primordialmente bajo el palio de la Primera enmienda de la Constitución federal. Generalmente está relacionada y en ocasiones se confunde con el concepto de la sobrextensión (overbreadth). [L]as faltas al debido proceso de ley causadas por leyes imprecisas de su faz —ausencia de advertencias claras a los demandantes; ausencia de patrones apropiados que sirvan de guía a los agentes de la ley, investigadores y tribunales de apelación— son precisamente las fallas de las [leyes "sobrextendidas"]."* Note, *The First Amendment overbreadth Doctrine,* 83 Harv. L. Rev. 844, 871-872 (1970).

Para fines de este caso, habiendo un precedente de mayor pertinencia —*Pueblo v. Hernández Colón, supra,* a la pág. 901—, declaramos que la frase en específico —no el resto del Código— adolece de ambigüedad. Puede cohibir libertades protegidas por la constitución. Sabemos que no fue la intención, pero esa parte del Código recuerda la prohibición del consumo de licor que fue abolida en Estados Unidos. La dificultad en definir el alcance de esa parte del Código puede llevar a excesos en su aplicación que violen derechos de libertad e intimidad atesorados en nuestra Constitución. Podemos confirmar esa determinación de instancia a pesar de que Perico's Pub no puede representar el derecho de los residentes de su área en lo que se refiere a su vida privada y familiar. *Zachry v. Tribunal Superior,* 104 D.P.R. 167 (1975), y *Com. de la Mujer v. Srio. de Justicia* 109 D.P.R. 715 (1980). El asunto es que *"no existe otra manera efectiva"* de salvaguardar esa libertad protegida. Véase *Pueblo v. Hernández Colón, supra,* a las págs. 897-898, y *U.N.T.S. v. Srio. de Salud,* 133 D.P.R. 153, 160. Pero otra cosa es poner condiciones y límites de horario a la venta, expendio o despacho lucrativo o gratuito de bebidas alcohólicas, por circunstancias que afecten la paz y la tranquilidad pública. La validez de ese tipo de legislación, como vimos antes, no se cuestiona. *Vélez v. Municipio de Vega Baja, supra.*

Nos toca abordar el asunto del brindis. Se impugna en el Art. 13.15 del Código antes citado. El artículo prohíbe servir bebidas, durante el horario permitido, *"en envases de cristal o en su envase original"*. Exceptúa de la prohibición al tipo de comercio en donde *"la bebida sea consumida sentado en una mesa o barra."* Se alega que esa norma viole la libertad de expresión porque no permite el brindis que, como bien se sabe, se hace de pie. No nos podemos sustraer de citar el alegato de don Ángel:

Esta disposición de este Articulado pasará a la historia como la *"Veda del Brindis"*. A preguntas de la parte demandante, el Sr. Angel(sic) Ortiz Guevara testificó que en su negocio se hacían bodas, cumpleaños, celebraciones, homenajes, ect, (sic), etc.; testificó que desde que se implementó el Código de Orden Público de Puerto nuevo, (sic), dichas actividades no se han podido realizar, debido a que no se permite ahora brindar.

El Brindis es una Institución, social, religiosa, que data desde la época de nuestro señor Cristo Jesús, brindó

Cristo Jesús en la Última Cena, en el bautizo de sus Apóstoles y Discípulos e instituyó el brindis en la Sagrada Eucaristía como recordatorio de su obra.

Citamos antes a *Pueblo v. Hernández Colón*, a la página 900, donde ofrece la clara motivación de prohibiciones como las del Código en esa parte. Se quiere evitar la violencia callejera, producto del exceso de consumo de alcohol y la estela de botellas y latas *"con los consabidos problemas de estética y salubridad"*. Obviamente, en el caso ante nuestra consideración, el juzgador de los hechos no creyó el testimonio de don Ángel en cuanto a que él dejara de celebrar bodas y quinceañeros en el Perico's Pub, por la *"veda del brindis"*. Tampoco nosotros. Está claro que si Perico's Pub es del tipo de comercio que provee asientos a los clientes para el consumo de bebidas, puede expender bebidas en copas y cualquiera de sus clientes podrá ponerse de pie y brindar. Basta que don Ángel se ocupe de que, como dice el texto del Código, *"el embase permanezca dentro del establecimiento en todo momento"*. Lo ha establecido reiteradamente la jurisprudencia:

*"Como parte de la interpretación extensiva, está el principio de que los estatutos penales deben ser interpretados restrictivamente en cuanto a lo que desfavorezca al acusado, y liberalmente en cuanto a lo que le favorezca. Pueblo v. Arandes de Celis, 120 D.P.R. 530, 538 (1988); Mari Bras v. Alcaide, 100 D.P.R. 506 (1972). Sin embargo, esta regla de que los estatutos penales deben interpretarse restrictivamente no exige que a las palabras de la ley deba dárseles un significado más limitado que el que el que usualmente tiene dentro de la realidad social o que deba hacerse caso omiso de la evidente intención del legislador. Pacheco v. Vargas, Alcaide, 120 D.P.R. 404, 410 (1988); Pueblo v. Hernández Colón, 118 D.P.R. 891, 903 (1987); Pueblo v. Montilla, 71 D.P.R. 36, 44 (1950)."*

Nos resta sólo abordar el último señalamiento de error sobre el tema de los registros y allanamientos irrazonables. Se alega que la ausencia de unos protocolos y guías para la aplicación del Código de lugar a intervenciones indebidas de la policía. Se trata de una alegación en abstracto. Las referencias a testimonios en apoyo de las alegaciones de este señalamiento no concuerdan con los traídos a nuestra consideración en las transcripciones de vista oral. Coincidimos con la conclusión de derecho del Tribunal de Primera Instancia. La Enmienda IV de la Constitución Federal y la sección 10 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico garantizan el derecho, a todo ciudadano, contra registros, incautaciones y allanamientos irrazonables. Las Reglas de Procedimiento Criminal contienen en sí mismas todas las salvaguardas contra registros y allanamientos, al establecer un procedimiento de solicitud y expedición de orden judicial previa al registro, 32 L.P.R.A. Ap. II, R. 229-234. Así también, nuestro ordenamiento constitucional ha reconocido las excepciones al requisito de efectuarse un registro o allanamiento mediando orden judicial. Las garantías que brindan las antes mencionadas Reglas de Procedimiento Criminal contra registros y allanamientos irrazonables, y las reconocidas excepciones a dichas reglas bastan como protocolo y guía para la implantación de las provisiones penales del Código. Véase E. L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Vol. I, (1991), páginas 403-453.

Por los fundamentos expuestos, se confirma la sentencia del Tribunal de Primera Instancia en todos sus extremos.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones